347 So.2d 422 (1977)
Rocco PUGLIESE, Petitioner,
v.
Tina PUGLIESE, Respondent.
No. 49908.
Supreme Court of Florida.
June 9, 1977.
*423 Steven L. Sommerfield, Venice, for petitioner.
Robert G. Jacobson, Farr, Farr, Haymans, Moseley & Odom, Punta Gorda, for respondent.
SUNDBERG, Justice.
This is a petition for writ of certiorari to review a decision of the District Court of Appeal, Second District, reported at 336 So.2d 614 (Fla.2d DCA 1976), which is alleged to be in conflict with Demetree v. State, 89 So.2d 498 (Fla. 1956), and its progeny with respect to the distinction between civil and criminal contempt, direct and indirect criminal contempt, and the procedural requirements for criminal contempt proceedings. Jurisdiction vests in this Court pursuant to Article V, Section 3(b)(3), Florida Constitution.
On November 4, 1975, the Circuit Court for Charlotte County, Florida, entered its final judgment dissolving the marriage of Rocco and Tina Pugliese. That judgment ordered Rocco, the petitioner, to vacate, by November 7, 1975, the portion of the marital duplex residence he had been occupying during the action. Rocco was then a 70-year-old immigrant from Italy not completely fluent in the English language. Subsequent to entry of the judgment, petitioner was advised by his counsel that motion for new trial, stay of execution, and notice of hearing thereon had been filed, and, consequently, the provisions of the final judgment requiring surrender of the premises were stayed pending final determination of those motions at the assigned hearing. Based on such advice, Rocco declined to evacuate. Tina Pugliese, respondent, filed a motion for contempt order and notice of hearing. The motion and notice of hearing were served upon counsel for petitioner and not petitioner himself.
On November 18, 1975, the contempt hearing was held before the circuit judge. As of that date, the trial court had entered no supersedeas so as to excuse petitioner from compliance with the terms of the final judgment of dissolution of marriage. At the hearing, petitioner was held in contempt of court for willfully refusing to vacate the premises as required by the final judgment and was sentenced to 13 days in the Charlotte County jail. The order did not provide a means by which petitioner could purge his contempt prior to the expiration of the 13-day jail sentence by complying with the acts required by the final judgment.
On appeal from the contempt order, the District Court of Appeal, Second District, *424 affirmed the trial court per curiam without opinion, citing Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), and Morgan v. State, 325 So.2d 40 (Fla.2d DCA 1975).
To review properly the decision of the District Court of Appeal, we must determine the nature of the contempt for which petitioner was found guilty and the proceedings culminating in the entry of the order of contempt. Initially, we must ascertain whether the order is for civil or criminal contempt and, if for criminal contempt, whether it is direct or indirect.
If the purpose of the proceedings is to coerce action or non-action by a party, the order of contempt is characterized as civil. This type contempt proceeding is ordinarily instituted by one of the parties to the litigation who seeks to coerce another party to perform or cease performing an act. The order of contempt is entered by the court for the private benefit of the offended party. Such orders, although imposing a jail sentence, classically provide for termination of the contemnor's sentence upon purging himself of the contempt. The sentence is usually indefinite and not for a fixed term. Consequently, it is said that the contemnor "carries the key to his cell in his own pocket." See Demetree v. State, supra; Faircloth v. Faircloth, 321 So.2d 87 (Fla.1st DCA 1975); and In re S.L.T., 180 So.2d 374 (Fla.2d DCA 1965).
On the other hand, a criminal contempt proceeding is maintained solely and simply to vindicate the authority of the court or to punish otherwise for conduct offensive to the public in violation of an order of the court. Ex Parte Earman, 85 Fla. 297, 95 So. 755 (1923); Demetree v. State, supra. Accordingly, while the conduct in the case at bar could be the subject of civil contempt proceedings at the instance of the wife to coerce the petitioner to vacate the premises, it could also be the basis for criminal contempt proceedings in the event the trial court determined the conduct to be obstinate and sought simply to vindicate the authority of the court by punishing the petitioner. It is apparent then that the nature of the conduct is not determinative of the character of the order. However, a determination of whether an order is civil or criminal must be made. If the purpose of the proceedings was the latter, greater procedural due process safeguards are involved. This principle is recognized in Fla.R.Crim.P. 3.830[1] and 3.840.[2] *425 The rule appropriate to the proceedings is determined by whether the contemptuous conduct is direct or indirect.
Where the act constituting the contempt is committed in the immediate presence of the court, this contempt is defined as direct. Where an act is committed out of the presence of the court, the proceeding to punish is for indirect (sometimes called constructive) contempt. A review of the Rules of Criminal Procedure set forth in footnotes 1 and 2, supra, reflects the greater procedural due process safeguards imposed when proceedings are for indirect criminal contempt.
With the foregoing principles in mind, we proceed to review the contempt order entered in the instant case and the proceedings which led to such order. The record of the hearing culminating in the order under review is ambivalent upon the issue of whether it was intended to be for civil or criminal contempt. After pronouncing the sentence he would impose, the trial judge made the following conflicting statements:
THE COURT: ... But this is directly in violation of the Court's order. And I want him moved off the premises and stay there.
It is a direct violation of the Court order and I think he should learn a little bit better than that.
* * * * * *
[COUNSEL FOR RESPONDENTTINA:] This order that the Court is entering is not that type of an order. This is an order of punishment for civil contempt on the part of this Respondent.
THE COURT: It is a clear violation of civil contempt if I ever seen one and that's true. And the order stands so you remain right here.
The former statement by the judge makes it appear that the sentence was intended to punish, not to coerce. The latter statement clearly characterizes the order as being for civil contempt.
Because the record yields no meaningful insight into the problem, we must look next to the face of the contempt order. After reciting the contemptuous conduct of petitioner, the order states simply:
ORDERED AND ADJUDGED that ROCCO PUGLIESE is in contempt of this Court; that he is hereby sentenced to serve thirteen (13) days in the Charlotte County Jail as punishment for contempt.
The absence of any provision allowing the petitioner to purge himself of the contempt and thereby terminate the sentence makes it appear that the order is for criminal contempt.
On the other hand, the manner in which the proceedings were initiated tends to belie the conclusion that the order sought to punish criminal contempt. Rather than having *426 been initiated by the judge "of his own motion or upon affidavit of any person having knowledge of the facts," the hearing and consequent order were provoked by a motion of the wife for contempt order. This is the classic method for gaining coercive relief by a private party to litigation.
Respondent maintains that the procedure here utilized is of no moment because counsel for the petitioner received the motion for contempt order, and petitioner appeared at the hearing with counsel at which time he admitted to violating the terms of the judgment earlier entered. She relies on a statement from In re S.L.T., supra, to the effect that formal pleading may become unnecessary even in proceedings for indirect criminal contempt if the person charged is given notice of the charge and a hearing. This position is untenable for two reasons. First, In re S.L.T. predates Fla. R.Crim.P. 3.840 [see Weech v. State, 309 So.2d 246 (Fla.4th DCA 1975)]. Second, even though petitioner, through counsel, received notice of a hearing for contempt order, he had no reason to believe at the time of the hearing that it was for other than civil contempt. He was not appraised that he would be required to stand ready to answer a charge of criminal contempt. See Aaron v. State, 284 So.2d 673 (Fla. 1973). It is questionable that petitioner would have taken the stand and testified unabashedly to his violation of the terms of the final judgment had he known that criminal penalties were involved. Since the procedural requirements of Fla.R.Crim.P. 3.840 had not been observed, petitioner had no means of suspecting the consequences of the hearing.
Respondent further asserts that petitioner misapprehends the rule applicable to the case at bar. She suggests that the order was for punishment of direct criminal contempt and, therefore, the less stringent procedure of Fla.R.Crim.P. 3.830 is applicable. Respondent arrives at this conclusion upon the premise that since petitioner admitted in the presence of the court that he had defied the terms of the judgment, the judge "heard the conduct constituting the contempt committed in the actual presence of the court," and, therefore, the judge could punish him summarily. Were this contention accepted, the distinction between direct and indirect criminal contempt would be obliterated because the judge must always hear some testimony in his presence at a hearing on indirect contempt concerning conduct which took place outside his presence. We reject any such notion that would expunge the distinction between direct and indirect contempt.
In the final analysis, the order under review cannot stand whether it be characterized as criminal or civil contempt. As explained above, the conduct complained of did not take place in the presence of the court, so at most it constituted indirect contempt. This being so it would be error to enter an order of indirect criminal contempt without adhering to the requirements of Fla.R.Crim.P. 3.840 which admittedly were not complied with. Furthermore, the order may not be sustained as being for civil contempt because no opportunity to purge was afforded.
We emphasize that in any instance where the trial court can reasonably anticipate that conduct of such a nature is present as will invoke the criminal contempt powers of the court to punish the offender, procedural due process of law demands that the proceedings be conducted in conformity with Fla.R.Crim.P. 3.840. If the trial court is of a mind in cases such as here presented to punish rather than coerce, then counsel for an offended party should be so advised when he makes application for an order of contempt so that proper affidavit and order to show cause can be secured to comply with the requirements of the rule. It is possible to convert civil contempt proceedings to criminal contempt proceedings after a hearing is commenced. Such a conversion would mandate the continuation of the hearing to provide for issuance of an order to show cause that complies with the rule with fair opportunity to the respondent to prepare and be heard. However, such practice flirts with procedural due process flaws. Accordingly, better practice suggests that such situations be *427 anticipated in advance wherever possible so that the full due process safeguards required by Fla.R.Crim.P. 3.840 will be afforded.
The petition for writ of certiorari is granted, the decision of the District Court of Appeal, Second District, is quashed, and this cause is remanded to the District Court with instructions to remand to the trial court for proceedings not inconsistent with the views expressed herein.
It is so ordered.
BOYD, ENGLAND and KARL, JJ., concur.
OVERTON, C.J., dissents.
NOTES
[1] "RULE 3.830. Direct Criminal Contempt

"A criminal contempt may be punished summarily if the court saw or heard the conduct constituting the contempt committed in the actual presence of the court. The judgment of guilt of contempt shall include a recital of those facts upon which the adjudication of guilt is based. Prior to the adjudication of guilt the judge shall inform the defendant of the accusation against him and inquire as to whether he has any cause to show why he should not be adjudged guilty of contempt by the Court and sentenced therefor. The defendant shall be given the opportunity to present evidence of excusing or mitigating circumstances. The judgment shall be signed by the judge and entered of record. Sentence shall be pronounced in open court."
[2] "RULE 3.840. Indirect Criminal Contempt

"(a) Indirect (Constructive) Criminal Contempt. A criminal contempt except as provided in the preceding subsection concerning direct contempts, shall be prosecuted in the following manner:
"(1) Order to Show Cause. The judge, of his own motion or upon affidavit of any person having knowledge of the facts, may issue and sign an order directed to the defendant, stating the essential facts constituting the criminal contempt charged and requiring him to appear before the court to show cause why he should not be held in contempt of court. The order shall specify the time and place of the hearing, with a reasonable time allowed for preparation of the defense after service of the order on the defendant.
"(2) Motions; Answer. The defendant, personally or by counsel, may move to dismiss the order to show cause, move for a statement of particulars or answer such order by way of explanation or defense. All motions and the answer shall be in writing unless specified otherwise by the judge. A defendant's omission to file motions or answer shall not be deemed as an admission of guilt of the contempt charged.
"(3) Order of Arrest; Bail. The judge may issue an order of arrest of the defendant if the judge has reason to believe the defendant will not appear in response to the order to show cause. The defendant shall be admitted to bail in the manner provided by law in criminal cases.
"(4) Arraignment; Hearing. The defendant may be arraigned at the time of the hearing, or prior thereto upon his request. A hearing to determine the guilt or innocence of the defendant shall follow a plea of not guilty. The judge may conduct a hearing without assistance of counsel or may be assisted by the prosecuting attorney or by an attorney appointed for that purpose. The defendant is entitled to be represented by counsel, have compulsory process for the attendance of witnesses, and may testify in his own defense.
"All issues of law and fact shall be heard and determined by the judge.
"(5) Disqualification of Judge. If the contempt charged involves disrespect to or criticism of a judge he shall disqualify himself from presiding at the hearing. Another judge shall be designated by the chief justice of the Supreme Court.
"(6) Verdict; Judgment. At the conclusion of the hearing the judge shall sign and enter of record a judgment of guilty or not guilty. There should be included in a judgment of guilty a recital of the facts constituting the contempt of which the defendant has been found and adjudicated guilty.
"(7) The Sentence; Indirect Contempt. Prior to the pronouncement of sentence, the judge shall inform the defendant of the accusation and judgment against him and inquire as to whether he has any cause to show why sentence should not be pronounced. The defendant shall be afforded the opportunity to present evidence of mitigating circumstances. The sentence shall be pronounced in open court and in the presence of the defendant."