GRIFFIN, J.
Petitioner below, Florence Keeton [“Keeton”], appeals an order of dismissal of temporary injunction for protection against repeat violence, an order to show cause, and an order of contempt. Although “snafu” is not an ancient legal term, it is a recognized one [1] and it is apt in this case to describe the events that require reversal of the contempt order for procedural reasons.
On August 29, 2003, Keeton filed a petition for injunction for protection against repeat violence against respondent below, Tommy Bryant [“Bryant”]. She alleged various instances of stalking: specifically, that on August 18-19, 2003, Bryant came to her apartment, knocked on the door continuously, sat in a parked car across from her apartment to watch her, came into the house when she opened the door thinking it was the phone company, and hung around after she got him to leave the house. Keeton also alleged that on a daily basis Bryant would show up where she was, watch her, and call her, as well as her family and friends.
On September 2, 2003, the court issued an order setting a hearing on the petition for injunction against repeat violence without issuance of an interim temporary injunction, finding that there was not enough facial evidence to warrant a temporary injunction at that time. The hearing was set for the next day — September 3, 2003— at 9:00 a.m. The certificate of service indi *924 cates that a copy was served on Keeton by hand delivery in open court and that a copy was forwarded to the sheriff for service on Bryant. On appeal, Keeton claims she first received notice of the hearing by U.S. mail on September 4, 2008, the day after the hearing.
The hearing on the petition took place as scheduled on September 3, 2003. Keeton was not present, but Bryant was present with counsel. Counsel for Bryant stated that he wanted to put on testimony because he had witnesses and evidence to show that Keeton' perjured herself in the petition. He requested Keeton be held in contempt and a bench warrant be issued for her arrest. The court allowed Bryant to present evidence and sworn testimony.
Bryant testified that on the dates alleged in the petition — August 18 and 19— he was in the Keys. He stated he was. in the Keys from August 16 through August 23. Bryant presented a gas receipt from Fort Pierce on his way to the Keys; a receipt from Eckerd in Key Largo dated August 16; a wire transfer receipt from Marathon to Keeton’s son for $100.00 dated August 18;' and tollbooth and gas receipts from his return trip through Fort Pierce on August 23. Bryant also testified that Keeton’s motive to lie regarding this incident was that he had filed a complaint on July 29, 2003, with the sheriffs office that she took money out of his checking account. He stated that Keeton knew he was in the Keys and she even called him three to four times on his cell phone while he was there. Bryant testified he and Keeton had been dating, and when the relationship ended is when “this” started.
Steven Keeton, Keeton’s soon to be ex-husband, verified that Bryant was in the Keys on those dates and that he spoke with Bryant several times on the phone while he was in the Keys. When the court asked why he would be talking to the man dating his soon to be ex-wife, he responded, “Because [Bryant] was trying to help her out. We were going through a pretty bitter divorce. My children were at his house. Then we conversed back and forth about what was — the goings on of my soon to be 'ex.”
Additionally, James Nicholas Miller testified’that he was with Bryant in the Keys from August 16 through August 23. Terry Mason testified that he is an employee of Bryant’s and was running the business for him between August 16 through August 23, while Bryant was in the Keys. He stated he communicated daily with Bryant in the Keys.
After the hearing, the court entered an order of dismissal without prejudice of the motion for temporary injunction for protection against repeat violence on the ground that Keeton failed to appear at the hearing. The court also entered an order to show cause. The order to show cause recited:
This cause comes before the court for review based upon the alleged conduct of the Petitioner for the issuance of an Order to Show Cause directed to [Kee-ton] for violation of the final judgment of injunction for Protection as is more specifically set forth in the Petition by Affidavit For Order to Show Cause For a Violation of Final Judgment of Injunction For Protection; a copy of which is attached hereto and made a part hereof.
NOW, THEREFORE, you [Keeton], are hereby ORDERED to appear before this court before Judge Steven deLar-oche, on September 18, 2003, at 9:00 a.m., in Room 5 of the Volusia County Courthouse, located at 125 E. Orange Avenue, Daytona Beach, to be arraigned. A subsequent hearing will be scheduled requiring Petitioner to show cause why he/she should not be held in con *925 tempt of this court for violation of the Final Judgment of Injunction for Protection as is stated in the attached Petition by Affidavit For Order to Show Cause For a Violation of Final Judgment of Injunction For Protection. Punishment, if imposed, may include a fíne and incarceration.
Should the court determine, based on the evidence presented at the hearing, that the Petitioner’s conduct warrants sanctions for civil contempt in addition to or instead of indirect criminal contempt, the court reserves the right to find the Petitioner guilty of civil contempt and impose appropriate civil sanctions.
The court hereby appoints the State Attorney’s Office to prosecute the ease.
Petitioner is advised that he/she is entitled to be represented by counsel,
(emphasis in original). This order is unclear in several respects, and there are important errors: there was no final judgment of injunction to violate, and the referenced “Petition by Affidavit For Order to Show Cause For a Violation of Final Judgment of Injunction For Protection” is not attached to the order.
A hearing on this order to show cause was held on September 18, 2003. Keeton appeared without counsel. The court explained to Keeton that, at the hearing on the petition for injunction at which she did not appear, evidence was presented by Bryant that the petition contained false statements. The court stated the evidence presented was “uncontroverted and fully believed by the court.” The judge explained that Keeton was before the court to show why she should not be held in contempt for filling out a false statement, and warned her she faced the possibility of a $1,000 fine and up to six months in county jail. Keeton responded that she may have mixed up the dates, but the events did occur as she alleged. The court then inquired why Keeton failed to appear at the hearing on the petition, and Keeton answered that she was in Jacksonville for a 9:00 a.m. doctor’s appointment. The court then adjudicated her guilty of contempt and ordered her to pay fines and court costs in the amount of $500 to be paid within ninety days.
The court’s written order of contempt contained two findings: (1) Keeton was in court for a repeat violence injunction, and (2) Keeton failed to appear for a hearing on September 3, 2003. The court ordered that Keeton was guilty of criminal contempt for falling to appear and ordered her to pay $500 to the Clerk of the Court within ninety days.
Keeton contends on appeal that the trial court erred in dismissing her petition for injunction on the ground that she failed to appear at the hearing because she was not given reasonable notice of the hearing in that the notice of hearing was issued less than twenty-four hours before the hearing. The record is inadequate to support reversal on this issue.
Keeton is correct, however, that the contempt procedures were inadequate. She notes that the order to show cause did not allege that she had filled out a false statement in her petition for injunction, nor did it allege she failed to appear at the hearing on the petition. Rather, the notice alleged a violation of the final judgment of injunction for protection against repeat violence, which the trial court never entered. The order recites that the allegations constituting contempt were set forth in an attached affidavit, but there is no affidavit attached to the order.
“When punishing [an individual] for contempt, a court must follow the procedure set forth in Florida Rule of Criminal Procedure 3.830.” M.L. v. State, 819 So.2d *926 240, 242 (Fla. 2d DCA 2002) (citing Bouie v. State, 784 So.2d 521, 523 (Fla. 4th DCA 2001)). “The provisions of rule 3.830 define the essence of due process in criminal contempt proceedings and must be scrupulously followed.” Id; see also Guardado v. Guardado, 813 So.2d 236, 237 (Fla. 5th DCA 2002) (scrupulous compliance with rule 3.830 is required). Because of the errors noted above, we are bound to vacate the contempt order.
REVERSED and REMANDED.
PLEUS and PALMER, JJ., concur.

. See e.g., American Fiber & Finishing, Inc., v. Tyco Healthcare Group, L.P., 362 F.3d 136, 143 (1st Cir.2004); Peacock v. State, 798 So.2d 909, 910 (Fla. 5th DCA 2001).