IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

ALEX DIAZ DE LA PORTILLA,

    Appellant,

v.

STATE OF FLORIDA,

    Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D11-5126

Opinion filed July 14, 2014.

An appeal from the Circuit Court for Leon County.
Frank E. Sheffield, Judge.

Miguel Diaz De La Portilla of Becker & Poliakoff, P.A., Coral Gables, and Arthur J. Berger, Miami, for Appellant.

Pamela Jo Bondi, Attorney General, and Trisha Meggs Pate, Assistant Attorney General, Tallahassee, for Appellee.


MAKAR, J.

    In this marital dissolution case, what initially was a spat over the family dogs spiraled into a direct criminal contempt order that is now the subject of this appeal. During the course of the proceeding, which the couple has now settled, the former husband, Alex Diaz de la Portilla, was ordered (by the first of two trial judges in this case) to turn over one of the couple's two dogs by February 16,

2011. He failed to do so, resulting in his now-former wife filing a motion for contempt, which was set for hearing by the trial judge who issued a show cause order compelling Diaz de la Portilla to appear. Due to the first trial judge's recusal, the scheduled hearing was cancelled, but the former wife renewed her motion after a successor judge was assigned. At the July 20, 2011 hearing on the renewed motion before the successor judge, Diaz de la Portilla did not appear, causing the trial judge to pronounce he was holding Diaz de la Portilla in civil contempt for failing to comply with the prior judge's order compelling transfer of the dog. Diaz de la Portilla was given until Friday, July 22nd, to comply with the dog-transfer order or be committed to the Leon County jail for thirty days. The trial court's findings and rulings were later memorialized in a written order, which Diaz de la Portilla appealed, reiterating his argument that a trial court cannot seek to enforce an interim equitable distribution of personal property (here, the dogs) by contempt order.

Despite the trial court's order, the dog was not transferred, causing another contempt motion to be filed with notice served on Diaz de la Portilla's counsel. At the August 23, 2011 hearing on the motion,[1] only Diaz de la Portilla's counsel was

---

[1] The original transcript of this hearing, which was filed in the trial court by Diaz de la Portilla's counsel on July 11, 2012, was transmitted to this Court in a supplemental record on August 16, 2012. At some point, either prior to the filing of the original transcript in the trial court or between that filing and transmittal of the supplemental record to this Court, profanity was handwritten on the original

present, offering no explanation for his client's absence. As it did the first time, the trial court again verbally pronounced Diaz de la Portilla in civil contempt, not only for not appearing pursuant to court order but also for failing to comply with the dog-transfer order. The trial court sentenced Diaz de la Portilla to five months and twenty-nine days in jail, and further found him in direct criminal contempt, ordering the same sentence to run consecutively with the civil contempt sentence. The trial court explained:

> At this juncture in this case it is my opinion that it is no longer practical, no longer possible for me to coerce compliance because your client is not going to do it. He is going to absent himself; he is going to continue to vilify his wife; he is going to continue to thumb his nose at this Court and to challenge my authority to enforce not only my Orders but the Orders of [the predecessor judge.] . . . Based upon the sworn Motion and the sworn testimony today I find him to be in civil contempt for not appearing today and not giving the dog to her as per [the predecessor judge's] Order. He is hereby sentenced to serve five months and 29 days for that contempt. In addition, based upon the fact that I have ordered him to appear and he has not appeared here today I find him in direct criminal contempt. He is also ordered to spend five months and 29 days for direct criminal contempt. And those two contempts are to run consecutive to one another. So I will prepare a written Order and written findings as to my findings today. And he has absolutely one hundred percent right to purge himself of this contempt by following the act that he has been ordered to follow since February 18th and that is give her one of the dogs during the pendency of these proceedings.

transcript. By an April 22, 2014 show cause order, and a response thereto, we have been unable to resolve who is responsible for the inflammatory marginalia, but direct the trial court—which is in a better position to make further inquiry—to pursue the matter on remand.

Two days later, the trial court entered a written order, finding that: the court had ordered Diaz de la Portilla to appear by serving notice to Diaz de la Portilla's counsel (because the trial judge did not know the location of Diaz de la Portilla); Diaz de la Portilla's counsel did not offer a reason for why his client did not appear; the court could not question Diaz de la Portilla due to his failure to appear; and Diaz de la Portilla's actions "were wilful [sic] contempt that occurred beyond a reasonable doubt directly in the presence of the Court and warranted appropriate sanctions."

Appeals were filed in which Diaz de la Portilla challenged the trial court's orders of civil and criminal contempt, which this Court stayed and consolidated for review and disposition. Resolution of the appeals has been delayed due to various procedural matters and two intervening developments. First, the former spouses entered a settlement agreement in December 2011, which included Diaz de la Portilla obtaining both dogs. As a part of the settlement, the parties agreed to recommend to the trial judge that all civil and criminal contempt orders be vacated, which the trial judge agreed to do except for the criminal contempt order because it was pending on appeal in this Court. As a result, Diaz de la Portilla dismissed the consolidated appeals relating to the civil contempt orders, asking this Court to relinquish jurisdiction to the trial judge to consider the parties' recommendation to dismiss the criminal contempt order, which this Court granted.

4

In its May 12, 2012 order, the trial court, recounting the lengthy history that led to the criminal contempt order, refused to vacate the order, which—according to the trial court—was based on Diaz de la Portilla's "concerted efforts" to interfere with the court's resolution of the case, his willful failures to comply with court orders and appear in court, his "conscious attempts" to prevent judicial resolution of the case, and "his utter disdain for the Courts (and all three Judges assigned to this case), coupled with his public pronouncements that he would not comply with any Orders and had no respect for the Court's decisions." Because the trial court denied the parties' request to vacate the criminal contempt order, the appeal currently before us, therefore, relates only to the order holding Diaz de la Portilla in direct criminal contempt.

Next, the matter returned to this Court but was delayed due to requested briefing extensions, an amended initial brief being filed in December 2012. In light of the case being "in the nature of a contempt proceeding solely for the purpose of vindicating the authority and dignity" of the trial court, it was determined that the State of Florida was an indispensable party. See In re Local Lodge No. 1248 of Int'l Ass'n of Machinists, 131 So. 2d 29, 35 (Fla. 1st DCA 1961). The case was restyled to include the State as the appellee, and the Office of the Attorney General was asked to file an answer brief, which it did in October 2013. A reply brief followed in November 2013, rendering this appeal ready for disposition.

II.

On appeal, Diaz de la Portilla asserts the trial court erred in holding him in direct criminal contempt because he was not served with the order to show cause nor was he personally subpoenaed to appear, thereby denying him due process. He claims it was fundamental error to hold him in direct criminal contempt without his presence or a finding that his non-appearance was intentional. He also argues that the record evidence is insufficient to establish a basis for direct criminal contempt arising from his non-appearance, and that he did nothing to obstruct the trial court's ability to hold the hearing because, in fact, the hearing was held.

The State responds by distinguishing between direct and indirect criminal contempt, noting that the former requires that the contemptuous act must occur in the immediate presence of the court, while the latter proceeding involves an act committed out of the presence of the court. It notes that the trial court's order is based on caselaw that is binding in this District, holding that a failure to appear can be considered direct criminal contempt, even though physical presence before the trial judge is lacking. See Speer v. State, 742 So. 2d 373, 373 (Fla. 1st DCA 1999) (holding that the "failure to appear in court pursuant to a court order can constitute direct criminal contempt."). Most districts hold similarly. See, e.g., Bouie v. State, 784 So. 2d 521, 522 (Fla. 4th DCA 2001) (failure to appear in court is punishable by direct criminal contempt); Woods v. State, 600 So. 2d 27, 29 (Fla. 4th DCA

6

1992) (failure to appear at a sentencing hearing can be direct criminal contempt); Porter v. Williams, 392 So. 2d 59, 60 (Fla. 5th DCA 1981) ("Non-appearance pursuant to an order of the court is normally considered a direct criminal contempt since it is committed in the immediate view and presence of the court."); but cf. Hayes v. State, 592 So. 2d 327, 329 (Fla. 4th DCA 1992) ("It is difficult, however, for us to understand how Hayes's conduct can be considered to have been committed in the 'actual presence of the court', when it was Hayes's *absence* from the presence of the court that caused the judge to complain.").

As the State points out, this line of cases originates from the Florida Supreme Court's two paragraph per curiam decision in Aron v. Huttoe, 265 So. 2d 699 (Fla. 1972), which affirmed the Third District's holding that a trial court may hold a non-appearing witness in direct criminal contempt due to the witness's failure to appear, without justification, pursuant to a properly issued subpoena. The witness at issue, Dr. Aron, failed to appear at trial, causing the trial judge to immediately have him arrested and brought to court for questioning. Aron v. Huttoe, 258 So. 2d 272, 272 (Fla. 3d DCA 1972).  Dr. Aron admitted he had been subpoenaed, but "got mixed up" and returned to his medical office after appearing in another case that morning in the same courthouse. Id. at 274. The trial court found this explanation inadequate, summarily holding the doctor in direct criminal contempt and fining him $300. Id. at 273. On appeal, Dr. Aron claimed due

7

process violations, namely a lack of written notice of his challenged conduct and a fair opportunity to defend himself (he did not have a lawyer). Id. On these facts, the Third District upheld the contempt order, finding it to be "rule contempt" for which the summary procedures used were adequate. Id. (citing Rule 1.410(e), Florida Rules of Civil Procedure, which allows for contempt for non-compliance with a subpoena).[2] The court also held that the failure to appear pursuant to a subpoena for trial is best characterized as a direct criminal contempt, citing Rule 1.830, now renumbered, which stated (and still states) that "[a] criminal contempt may be punished summarily if the court saw or heard the conduct constituting the contempt committed in the actual presence of the court." Fla. R. Crim. P. 3.830.

The Third District, noting that Dr. Aron had presented a "logical argument" that his contemptuous conduct "was not 'committed in the actual presence of the court,'" certified its "opinion and decision to the Supreme Court of Florida as one passing upon a question of great public importance." 258 So. 2d at 274 (internal citations omitted). As recited by the Florida Supreme Court, the question certified was:

> Whether a person who fails to appear at trial after having been properly subpoenaed may be brought into court during the trial and summarily held in contempt after failing to prove an adequate excuse.

---

[2] The cited rule is unchanged, but has been renumbered. See Fla. R. Civ. P. 1.410(f) (2014) ("(f) **Contempt.** Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued.")

265 So. 2d at 700. Explaining it had heard oral argument and reviewed the briefs and record, the Florida Supreme Court's abbreviated decision simply noted the certified question and held that "the District Court of Appeal has correctly decided the cause and its decision is adopted as the ruling of this Court." Id.

This wholesale adoption of the Third District's opinion, without elaboration and without directly answering the certified question, has created forty years of uncertainty.[3] Although some courts, including this Court in Speer, have cited Aron for the broad proposition that a failure to appear is a basis for direct criminal contempt, others have distinguished it or deemed it in tension with, or disavowed by, subsequent supreme court cases. See, e.g., Kelley v. Rice, 800 So. 2d 247, 253 (Fla. 2d DCA 2001) (interpreting decision in Pugliese v. Pugliese, 347 So. 2d 422 (Fla. 1977) as a partial repudiation of Aron by concluding that "to the extent the supreme court had adopted that dicta [in Aron], the court has since disavowed it."); Martinez v. State, 799 So. 2d 313, 315 (Fla. 2d DCA 2001) (noting the district court conflict and the tension of Aron with the supreme court's decision in Gidden v. State, 613 So. 2d 457 (Fla. 1993)).

---

[3] "Needless to say, adopting lower court opinions is a less-than-ideal method to establish law in a clear and straightforward way, which may explain why it is rarely used." Scott D. Makar, Browning v. Florida Hometown Democracy, Inc.: A Case Study in Judicial Opinion Writing, 41 Stetson L. Rev. 477, 491 (2012).

Lacking a clear indication that the Florida Supreme Court has implicitly repudiated Aron or its scope of application, we must remain steadfast to our precedent in Speer. In doing so, we appreciate the State's request that we undertake clarifying this area of the law; it has done an admirable job of providing a well-reasoned path to follow, that being to establish as a "better practice" that trial courts prospectively be guided by two guideposts: (a) that "the failure to appear in court be treated as an indirect criminal contempt rather than a direct criminal contempt" and (b) that a criminal contempt proceeding be used that is "totally separate from the civil proceeding to ensure that the criminal contempt proceeding is handled as a criminal matter as required by Rule 3.840." The merit of recasting a party's non-appearance as an indirect criminal contempt, however, is for our supreme court to address, and we certify a question below to enable them to do so. We pass upon the question by continuing to read Aron as holding that a failure to appear in court is punishable by direct criminal contempt under Florida Rule of Criminal Procedure 3.830, which may be adjudged concurrently in a civil proceeding. We find merit in, but reject due to Speer, the view that a failure to appear in court ought to be dealt with as and punishable by indirect criminal contempt under Rule 3.840.

Turning back to Speer and its application in this case, we first hold that the trial judge was entitled to apply principles of direct criminal contempt. The trial

10

judge was exceptionally thorough in his detailed orders explaining the basis for why direct criminal contempt was appropriate given the many ways he perceived that Diaz de la Portilla had burdened and delayed the orderly administration of justice in what ought to have been a relatively simple dissolution matter. That said, a key missing element is whether Diaz de la Portilla was notified that he was required to attend but failed to do so without excuse. In Speer, this Court reversed the order of contempt "because nothing in the record indicates that Speer had been ordered to appear in court." 742 So. 2d at 373. Here, no question exists that Diaz de la Portilla had been ordered to appear in the trial court; but nothing shows that he was notified personally of the trial court's order and, if so, his reasons for not appearing, which creates a due process problem. See O'Neal v. State, 501 So. 2d 98, 100 (Fla. 1st DCA 1987) ("[B]efore a party is adjudged in contempt of court, he must be put on notice of what the consequences of his words or actions are about to entail so that he may avert those consequences by explaining his conduct.").

The State concedes this failure was error, but recommends that we remand the case for a hearing "after giving [Diaz de la Portilla] proper notice and allow[ing] the parties to present evidence to establish whether or not [Diaz de la Portilla] knew he was required to attend the hearing and whether or not he intentionally failed to appear at the hearing." Indeed, some of our cases suggest

11

that this type of recommendation—a reversal "without prejudice to the institution of proper contempt proceedings"—can be an appropriate remedy where an error in a contempt proceeding is shown. See, e.g., Garrett v. State, 876 So. 2d 24, 26 (Fla. 1st DCA 2004) (reversing contempt order because "appellant was neither informed that under the rule he could present mitigating circumstances, nor given a separate and distinct opportunity to present mitigating circumstances."); Marshall v. State, 764 So. 2d 908, 908 (Fla. 1st DCA 2000) (reversing contempt order because trial court "failed to inquire as to whether appellant had any cause to show why he should not be adjudicated guilty of contempt and failed to give appellant an opportunity to present excusing or mitigating evidence."). Cases that Diaz de la Portilla cites also suggest that remand without prejudice to further proceedings can be appropriate. See, e.g., Maniatakos v. Hirsch, 106 So. 3d 953, 954 (Fla. 4th DCA 2013) (remanding "for further proceedings during which appellant may be given the opportunity to show cause why he should not be adjudged guilty of contempt and to present evidence of excusing or mitigating circumstances in compliance with Rule 3.830."); Anton v. Anton, 106 So. 3d 34, 35 (Fla. 3d DCA 2013) (reversing an indirect contempt order "without prejudice" to further proceedings).

But these cases differ from the situation here, which involves a claim of evidentiary insufficiency. In response to the State's recommendation, Diaz de la Portilla—consistent with his argument that fundamental error occurred because

12

insufficient evidence exists to support holding him in criminal contempt—says it would violate the federal and state Double Jeopardy Clauses[4] to subject him to renewed contempt proceedings. Those clauses' prohibition against successive prosecutions doesn't rule out a retrial of a defendant who successfully gets his conviction overturned on appeal because of an error in the initial proceedings. See, e.g, Gore v. State, 784 So. 2d 418 (Fla. 2001). But Diaz de la Portilla's primary point is not one based on mere error at trial; instead, it is founded upon the lack of any evidence that he was notified of the order requiring him to appear. His point is one of evidentiary insufficiency, which makes his criminal contempt conviction fall more closely in line with those situations for which a successive prosecution is prohibited. See United States v. Scott, 437 U.S. 82, 90-91 (1978) ("The successful appeal of a judgment of conviction, *on any ground other than the insufficiency of the evidence to support the verdict* . . . poses no bar to further prosecution on the same charge.") (emphasis added). Little doubt exists that the Double Jeopardy Clauses apply to criminal contempt proceedings, see United States v. Dixon, 509 U.S. 688 (1993), and that they should prevent reinstitution of direct criminal contempt proceedings in the present case in light of the State's forthright concession.

---

[4] U.S. Const. amend. V. ("[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ."); Art. I, § 9, Fla. Const. ("No person shall . . . be twice put in jeopardy for the same offense[.]").

This conclusion is borne out in the caselaw analyzing the interplay of criminal contempt convictions and the Double Jeopardy Clauses. The United States Supreme Court has held that the clauses apply when a criminal contempt conviction "based on violation of a criminal law incorporated into a court order" is followed by "a subsequent prosecution for the criminal offense" as in Dixon. 509 U.S. at 695. Similarly, the clauses also apply when a conviction for a violation of a criminal law is followed by a "prosecution for contempt of court arising out of" the same violation of law. See N.T. v. State, 682 So. 2d 688, 690 (Fla. 5th DCA 1996); Hernandez v. State, 624 So. 2d 782, 783 (Fla. 2d DCA 1993) ("[S]uccessive prosecution for indirect criminal contempt in this case violates the Double Jeopardy Clause" if based on substantive offense underlying prior conviction); see also Fierro v. State, 653 So. 2d 447, 448 (Fla. 1st DCA 1995) (noting that under Hernandez the Double Jeopardy Clause "prohibits the subsequent prosecution for a substantive offense that underlies a criminal contempt charge for which one has been convicted. It also holds the converse, i.e., subsequent prosecution for criminal contempt, the basis of which is a substantive offense for which a conviction has been obtained, violates the Double Jeopardy Clause.").

Given this doctrinal symmetry in related contexts, it seems evident that a bar on successive prosecution must also apply to prevent a second attempt at securing a criminal contempt conviction where, as here, the original conviction was based

14

on insufficient evidence; to hold otherwise would fall squarely in the crosshairs of what the Double Jeopardy Clauses disallow post-<u>Dixon</u>. <u>See, e.g.</u>, <u>Lascaibar v. Lascaibar</u>, 773 So. 2d 1236 (Fla. 3d DCA 2000) (acquittal of husband on indirect criminal contempt charge barred retrial under <u>Dixon</u>). As such, Diaz de la Portilla, as a defendant in a criminal contempt proceeding, is thereby protected from successive prosecution for direct criminal contempt under the Double Jeopardy Clauses based on the evidentiary insufficiency in this case. In so holding, we in no way condone a failure to appear as required by a court order; such conduct is worthy of punishment via contempt, provided the requisite due process is shown.

Finally, in light of the foregoing discussion about the uncertainty that exists regarding <u>Aron</u>'s application in cases such as this one, we certify the following question of great public importance:

> Whether a party who is ordered by a trial court to appear at a scheduled hearing, but fails to do so, may be found in direct criminal contempt under Florida Rules of Criminal Procedure 3.830; or whether such conduct should be addressed as indirect criminal contempt under Florida Rules of Criminal Procedure 3.840?

Should the supreme court choose to accept jurisdiction, we recommend that it also consider the State's suggestion that criminal contempt hearings be held separately from the civil proceedings. In addition, our ruling that the Double Jeopardy Clauses shield Diaz de la Portilla from retrial, is one upon which Florida's courts could use clearer guidance in light of the uncertainty that <u>Dixon</u> injected into

15

contempt proceedings under pre-existing Florida legal principles. See Scott K. Lippman, The Ramifications of U.S. v. Dixon in Florida, Fla. B.J., Feb. 1994, at 51, 53 ("[T]hat part of the *Dixon* decision holding that former jeopardy attaches to criminal contempt proceedings will require a drastic overhaul in existing jurisprudential thought on this matter by the courts of this state" because "Florida courts have long clung" to the view that "criminal contempt proceedings are simply exempt from double jeopardy analysis under the now-irrelevant notion that contempt proceedings serve to vindicate different 'interests' than criminal laws.").

REVERSED and REMANDED; QUESTION CERTIFIED.

THOMAS and RAY, JJ., CONCUR.