# Supreme Court of Florida

————————

No. SC14-1625
————————

**STATE OF FLORIDA,**
Petitioner,

vs.

**ALEX DIAZ DE LA PORTILLA,**
Respondent.

[November 5, 2015]

LEWIS, J.

This case is before the Court for review of the decision of the First District

Court of Appeal in Diaz de la Portilla v. State, 142 So. 3d 928 (Fla. 1st DCA

2014). In its decision the district court ruled upon the following question, which

the court certified to be of great public importance:

> Whether a party who is ordered by a trial court to appear at a
> scheduled hearing, but fails to do so, may be found in direct criminal
> contempt under Florida Rule[] of Criminal Procedure 3.830; or
> whether such conduct should be addressed as indirect criminal
> contempt under Florida Rule[] of Criminal Procedure 3.840?

Id. at 935. Both Diaz de la Portilla and the State take the position that the failure to appear pursuant to an order should be treated as indirect criminal contempt under rule 3.840. We agree. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.

## BACKGROUND

This criminal contempt matter arises from the failure of Respondent Alex Diaz de la Portilla to appear pursuant to a court order at a hearing on a motion to hold him in contempt during a dissolution of marriage proceeding. During the dissolution proceeding, Diaz de la Portilla was ordered to deliver one of two dogs owned by the couple into the wife's custody, which he failed to do. Diaz de la Portilla, 142 So. 3d at 929. As a result, the wife filed a motion for contempt. Id. A hearing on the motion was scheduled, and the trial court issued an order to show cause that directed Diaz de la Portilla to appear. Id.

During the hearing on the motion for contempt, at which Diaz de la Portilla did not appear, the trial court held him in civil contempt for failure to comply with the order to transfer the dog to his wife. Id. The court ordered Diaz de la Portilla to comply with the order or be committed to jail for thirty days. Id. However, Diaz de la Portilla still did not transfer the dog, and another motion for contempt was filed. Id. The motion was served on counsel for Diaz de la Portilla, and at a subsequent hearing on the motion, only counsel for Diaz de la Portilla was present,

- 2 -

not Diaz de la Portilla himself.  Id.  No explanation was provided for his absence.  Id. at 929-30.

The trial court verbally held Diaz de la Portilla in civil contempt for failure to comply with the order to appear, as well as the order to transfer the dog.  Id. at 930.  The trial court also held Diaz de la Portilla in criminal contempt, explaining:

> At this juncture in this case it is my opinion that it is no longer practical, no longer possible for me to coerce compliance because your client is not going to do it.  He is going to absent himself; he is going to continue to vilify his wife; he is going to continue to thumb his nose at this Court and to challenge my authority to enforce not only my Orders but the Orders of [the predecessor judge.] . . .  Based upon the sworn Motion and the sworn testimony today I find him to be in civil contempt for not appearing today and not giving the dog to [his wife] as per [the predecessor judge's] Order. . . .  In addition, based upon the fact that I have ordered him to appear and he has not appeared here today I find him in direct criminal contempt.

Id. (some alterations in original).  Additionally, the trial court issued a written Order of Direct Criminal Contempt and Warrant for Commitment that stated, in relevant part:

> WHEREAS, this Court held a hearing on said Order to Show Cause on August 23, 2011, with counsel for Petitioner/Wife and Petitioner/Wife appearing; Counsel for Respondent/Husband appearing but without his client and offering no explanation or reason as to why his client was not present as directed, and presenting no legal or factual basis for said non-appearance; and
> WHEREAS, this Court having no ability to inquire of the Respondent/Husband as to any issues due to his [willful] non-

appearance, and having personal knowledge of his failure to appear; and

     WHEREAS, the Court was unable to inquire of the Respondent/Husband as to why he should not be adjudged guilty of Direct Criminal Contempt; and

. . .

     WHEREAS, sworn testimony was taken from Petitioner/Wife that Respondent/Husband had still not complied with the prior Orders of this Court by delivering her one of the dogs, and finding the Respondent/Husband still has the dogs, thereby giving him the ability to comply with the prior Orders of this Court; and

. . .

     WHEREAS, the Court found that the actions of Respondent/ Husband were [willful] contempt that occurred beyond a reasonable doubt directly in the presence of the Court and warranted appropriate sanctions; and

     WHEREAS the Court has complied with Rule 3.830 in this finding and process, and failure to appear can be Direct Criminal Contempt Bouie v. State, 784 So. 2d 521 (Fla. 4th DCA 2001); Speer v. State, 742 So. 2d 373 (Fla. 1st DCA 1999); Porter v. Williams, 392 So. 2d 59 (Fla. 5th DCA 1981);

     NOW, THEREFORE, in consideration thereof, it is

     ORDERED AND ADJUDGED that Respondent/Husband, ALEX DIAZ DE LA PORTILLA, is guilty of Direct Criminal Contempt of this Court for his failure to appear at [the] hearing herein on the Order to Show Cause, as directed by the Order to Show Cause served on his counsel on August 4, 2011 (served on counsel due to the Court having no knowledge as to the current whereabouts of Respondent/Husband).

During the appeal of the criminal contempt order, the State was joined as an indispensable party and it recommended that the failure to appear in court be treated as indirect, rather than direct, criminal contempt. Diaz de la Portilla, 142 So. 3d at 931, 933. Based on prior precedent, the First District held that the failure to appear pursuant to an order constituted direct criminal contempt. Id. at 933

- 4 -

(citing Speer, 742 So. 2d at 373). However, the district court concluded that the evidence was insufficient to establish criminal contempt because there was no evidence regarding whether Diaz de la Portilla knowingly failed to attend the hearing without an excuse—an element of the offense. Id. Accordingly, the district court reversed the conviction, but certified the above-quoted question to be one of great public importance.[1] Id. at 935.

## ANALYSIS

### Direct Criminal Contempt

This Court has previously explained the difference between direct and indirect criminal contempt:

> Where the act constituting the contempt is committed in the immediate presence of the court, this contempt is defined as direct. Where an act is committed out of the presence of the court, the proceeding to punish is for indirect (sometimes called constructive) contempt. A review of the Rules of Criminal Procedure . . . reflects the greater procedural due process safeguards imposed when proceedings are for indirect criminal contempt.

Pugliese v. Pugliese, 347 So. 2d 422, 425 (Fla. 1977). Direct criminal contempt, also referred to as summary contempt, see Scott v. Anderson, 405 So. 2d 228, 237

---

1. The First District also recommended this Court provide direction with regard to whether the Double Jeopardy Clauses of the Florida and United States Constitutions bar retrial for contempt. We decline to address this supplemental issue. We also decline to address the request that this Court issue guidelines regarding the "best practices" for criminal contempt proceedings.

(Fla. 1st DCA 1981), is governed by Florida Rule of Criminal Procedure 3.830, which provides for limited procedural protections:

> A criminal contempt may be punished summarily if the court saw or heard the conduct constituting the contempt committed in the actual presence of the court. The judgment of guilt of contempt shall include a recital of those facts on which the adjudication of guilt is based. Prior to the adjudication of guilt the judge shall inform the defendant of the accusation against the defendant and inquire as to whether the defendant has any cause to show why he or she should not be adjudged guilty of contempt by the court and sentenced therefor. The defendant shall be given the opportunity to present evidence of excusing or mitigating circumstances. The judgment shall be signed by the judge and entered of record. Sentence shall be pronounced in open court.

In contrast, rule 3.840, governing indirect criminal contempt, requires additional procedural protections be provided to the person being held in contempt. See Pugliese, 347 So. 2d at 425.

The United States Supreme Court explained the purpose and parameters of summary contempt in Cooke v. United States, 267 U.S. 517 (1925). In Cooke, an attorney wrote a derogatory letter to a trial judge questioning his impartiality and requesting that he recuse himself. Id. at 532. After the trial court confirmed that the attorney wrote the letter, it found him to be in contempt without allowing him to present a defense or mitigation. Id. at 537-38. However, the Supreme Court determined that the circumstances did not warrant the use of summary procedures because the defiance did not occur in open court. Id. at 534. The Supreme Court explained:

- 6 -

To preserve order in the court room for the proper conduct of business, the court must act instantly to suppress disturbance or violence or physical obstruction or disrespect to the court when occurring in open court. There is no need of evidence or assistance of counsel before punishment, because the court has seen the offense. Such summary vindication of the court's dignity and authority is necessary.

Id. The Supreme Court reasoned that routine due process requirements were not necessary in cases involving conduct in open court viewed by the judge, and the need for immediate vindication of the dignity of the court justified bypassing normal procedural due process requirements. Id. at 536. However, the Supreme Court concluded that there would be no justification for a departure from normal procedures when the contempt did not occur in open court. Id. at 537. The Supreme Court later commented that where the facts on which the contempt is based are established through testimony, summary contempt, without an opportunity for defense, is not justified. In re Oliver, 333 U.S. 257, 275 (1948).

This Court has also discussed the distinctions between direct and indirect criminal contempt. In Pugliese, which involved a dissolution of marriage, the judgment of dissolution required the husband to vacate a portion of the marital residence by a certain date. 347 So. 2d at 423. After the judgment was entered in the dissolution proceedings, counsel advised the husband that he was not yet required to vacate the premises because counsel had filed a motion for new trial, stay of execution, and notice of hearing. Id. The wife filed a motion for contempt

and notice of hearing, which were served on counsel for the husband only, not the husband.  Id.  During the contempt hearing, the husband admitted he did not vacate the property and was held in contempt.  Id. at 423, 426.  The order did not specify whether the contempt was civil or criminal, or, if criminal, direct or indirect.  Id. at 424.

On review, this Court concluded that because the conduct did not occur in the presence of the trial court, it was, at most, indirect criminal contempt.  Id. at 426.  The Court rejected the assertion of the wife that the admission by the husband in open court to the contemptuous conduct (remaining in the residence) supplied a basis for direct criminal contempt.  Id.  The Court explained that the position advocated by the wife eliminated the distinction between direct and indirect criminal contempt because any time a trial court hears testimony in connection with indirect criminal contempt for conduct that occurred outside its presence, the testimony will nonetheless occur within the presence of the trial court.  Id.  Additionally, the Court provided the following recommendation with respect to the conversion of civil contempt proceedings into criminal contempt proceedings:

> It is possible to convert civil contempt proceedings to criminal contempt proceedings after a hearing is commenced.  Such a conversion would mandate the continuation of the hearing to provide for issuance of an order to show cause that complies with the rule with fair opportunity to the respondent to prepare and be heard.  However, such practice flirts with procedural due process flaws.  Accordingly,

better practice suggests that such situations be anticipated in advance wherever possible so that the full due process safeguards required by Fla. R. Crim. P. 3.840 will be afforded.

Id. at 426-27.

This Court's Precedent

This Court's prior opinions have caused some confusion with regard to whether the failure to appear should be treated as direct or indirect criminal contempt. In Lee v. Bauer, 72 So. 2d 792, 792-93 (Fla. 1954), this Court addressed the failure of an attorney to appear for a pretrial conference, for which the trial court imposed a monetary sanction. The attorney contested the fine on the basis that the trial court imposed it without providing him an opportunity to defend himself through an order to show cause. Id. This Court held that the situation did not warrant summary discipline and punishment in the absence of an opportunity for the attorney to explain his failure to appear prior to being held in contempt. Id. at 793.

This Court later addressed a similar, albeit distinguishable, issue in Aron v. Huttoe (Aron II), 265 So. 2d 699 (Fla. 1972). Aron II was before this Court on the basis of the following certified question:

> Whether a person who fails to appear at trial after having been properly subpoenaed may be brought into court during the trial and summarily held in contempt after failing to prove an adequate excuse.

Id. at 700. The underlying facts that gave rise to the order of contempt were explained in Aron v. Huttoe (Aron I), 258 So. 2d 272 (Fla. 3d DCA 1972). A doctor had been subpoenaed by both parties to appear during trial with certain records, but he failed to do so. Id. at 272. The trial court issued a bench warrant for the doctor's arrest and a contempt order that directed he be brought before the court to show cause why he should not be held in contempt. Id. at 272-73. The doctor appeared before the trial court and explained that he had "got[ten] 'mixed up' " about the case. Id. at 274. The court ruled this to be an inadequate excuse and entered the order of contempt. Id. at 273.

The doctor appealed the contempt order and alleged that the summary order of contempt violated his right to due process. Id. The Third District Court of Appeal held that the doctor's actions constituted "rule contempt" under Florida Rule of Civil Procedure 1.410(e),[2] which provided, "[f]ailure by any person without adequate excuse to obey a subpoena served upon him may be deemed a contempt of the court from which the subpoena issued." Id. at 273. The Third District further stated that, assuming arguendo that the contempt must be characterized as direct or indirect, the failure to appear qualified as direct criminal contempt. Id. at 273-74. The district court reasoned that because the trial court was informed by counsel that the witness had been subpoenaed, and the trial court

2. This provision has since been renumbered as 1.410(f).

- 10 -

observed the absence of the witness, the contemptuous acts were committed in the actual presence of the court.  Id. at 274.  On review of the certified question, this Court adopted the decision of the Third District without elaboration or reference to its prior decision in Lee.  Aron II, 265 So. 2d at 700.

### District Courts of Appeal

The district and trial courts have employed both direct and indirect criminal contempt to failures to appear.  Compare Speer, 742 So. 2d at 373 (treating the failure to appear as direct criminal contempt, but holding there was insufficient evidence to support the contempt order), with Villate v. State, 663 So. 2d 672, 673 (Fla. 4th DCA 1995) (affirming finding of indirect criminal contempt for failing to appear as a witness).  Additionally, both the Second and Fourth District Courts of Appeal have questioned the wisdom of Aron I and Aron II.  See Kelley v. Rice, 800 So. 2d 247, 253 (Fla. 2d DCA 2001); Woods v. State, 600 So. 2d 27, 29 (Fla. 4th DCA 1992).

In Kelley, an eighteen-year-old girl witnessed a violent crime and provided a statement to the police.  Id. at 249.  The State attempted to personally serve Kelley with a subpoena to testify during the subsequent trial, but could not locate her.  Id. Three subpoenas were directed to the same address, where she formerly lived and where her sister continued to live.  Id.  The first and third subpoenas were returned with a notation that she had moved and not left a forwarding address, and the

second was left at the address with her sister.  Id.  After Kelley did not appear to testify during trial, the State sought, and the trial court issued, a writ of bodily attachment against her.  Id.  Kelley was arrested and, during a hearing, she informed the court that she did not receive the subpoenas because she did not live at the address where they were sent.  Id.  The court determined that Kelley had been properly served and found her to be in contempt, but did not specify whether it employed direct or indirect criminal contempt.  Id.

The Second District concluded that the limited due process afforded to Kelley demonstrated that the trial court proceeded against her on a charge of direct criminal contempt.  Id. at 251.  The district court reversed the order of contempt and explained that direct contempt is a limited category of contempt that applies where there is misconduct in the presence of the judge in open court, and which disturbs the business of the court.  Id. at 252, 255.  The district court also recognized that direct criminal contempt presents a narrow exception to normal due process requirements.  Id. at 252.  The district court concluded that the trial court lacked personal knowledge with respect to whether Kelly knew she was required to appear in court—an element of the contempt—and Kelley's conduct could not constitutionally be summarily punished under the limited procedures provided under direct criminal contempt.  Id.  The court also noted that because

Kelley was not punished until approximately six months after the conduct, immediate punishment was clearly not necessary. Id.

The Second District in Kelley distinguished the case from Aron I on the basis that Aron I involved "rule contempt" under rule 1.410(e), which applies only to civil proceedings and provides that a person who fails to obey a subpoena may be held in contempt. Id. at 253. Moreover, the district court concluded that the language in Aron I that categorized the doctor's failure to appear as direct criminal contempt based on statements made by counsel that the doctor was served with the subpoenas constituted dicta that was rejected by this Court in Pugliese when it explained that to consider in-court statements regarding out-of-court conduct as a basis for direct criminal contempt would obliterate the distinction between these two types of contempt. Id.

The Fourth District Court of Appeal has also questioned whether direct criminal contempt should apply to a failure to appear. In Hayes v. State, 592 So. 2d 327, 327 (Fla. 4th DCA 1992), the defendant in a criminal trial left the courthouse during a recess to locate his sister, who he wished to present as a witness. The trial court ordered the defendant to appear three weeks later to show cause why he should not be held in contempt. Id. The defendant appeared without an attorney, and the trial court asked him why he had left the courthouse. Id. The defendant explained that he left to retrieve his sister and was late in returning

because the car experienced mechanical difficulties.  Id.  The trial court found the defendant to be in contempt.  Id.  On appeal, both parties asserted that the action involved direct contempt under rule 3.830.  Id. at 329.  Without citation to Aron I or Aron II, the district court in Hayes questioned how an individual's absence from the court could be considered to occur in the presence of the court.  Id. Additionally, the Fourth District in Woods applied Aron II to hold that a defendant's failure to appear for sentencing should be treated as direct criminal contempt, but noted that federal courts generally do not treat a failure to appear as a summary contempt.  600 So. 2d at 29.

Certified Question

The question certified by the First District provides:

> Whether a party who is ordered by a trial court to appear at a scheduled hearing, but fails to do so, may be found in direct criminal contempt under Florida Rule[] of Criminal Procedure 3.830; or whether such conduct should be addressed as indirect criminal contempt under Florida Rule[] of Criminal Procedure 3.840?

Diaz de la Portilla, 142 So. 3d at 935.  Both Diaz de la Portilla and the State take the position that the failure to appear pursuant to an order should be treated as indirect criminal contempt under rule 3.840.  We agree.

The procedures delineated by rule 3.830 governing direct criminal contempt simply are not suited for application to a failure to appear pursuant to a court order. The order of contempt adjudicates the defendant guilty, and the provisions of rule

- 14 -

3.830 define the essence of due process in direct criminal contempt proceedings. See Hutcheson v. State, 903 So. 2d 1060, 1062 (Fla. 5th DCA 2005) (citing Keeton v. Bryant, 877 So. 2d 922, 926 (Fla. 5th DCA 2004); M.L. v. State, 819 So. 2d 240, 242 (Fla. 2d DCA 2002)). Before a person may be convicted for direct criminal contempt, rule 3.830 requires the trial court to inform the defendant of the basis for the contempt and inquire whether the defendant has any cause to show why he or she should not be adjudicated guilty and sentenced for contempt. Fla. R. Crim. P. 3.830. Additionally, the defendant must be provided with an opportunity to present evidence of excusing or mitigating circumstances. Id. When an individual fails to appear, the court is not capable of making the necessary inquiries of the absent individual, and likewise is unable to hear evidence of excusing or mitigating circumstances. The rules of criminal contempt must be strictly followed so as to protect the due process rights of the defendant. See Pugliese, 347 So. 2d at 426 (holding that due process demands conformity with rule 3.840); see also Searcy v. State, 971 So. 2d 1008, 1014 (Fla. 3d DCA 2008) (holding that courts must strictly comply with rule 3.830).

Additionally, treating a failure to appear as direct criminal contempt does not fulfill the purpose of this narrow form of contempt, which applies when a contemptuous act occurs in the presence of the court, is an affront to the court, disrupts and frustrates an ongoing proceeding, and requires immediate action to

vindicate the authority of the court.  See United States v. Wilson, 421 U.S. 309, 315-16 (1975).  Direct criminal contempt should not be employed where time is not of the essence.  Id. at 319; see also Kelley, 800 So. 2d at 254.  Where a contempt is based on an individual's failure to appear, the trial court would still be required to conduct a hearing at a later date, when the alleged contemnor is present, to conform to the due process requirements of rule 3.830.  Immediate action to preserve the court's order and authority is simply not possible where the disruptive misconduct is a failure to appear.

Moreover, the trial court may not have personal knowledge with respect to whether an individual knew that his or her presence was required, or whether the individual was somehow unable to appear, and therefore could not know whether the nonappearance was willful.  See United States v. Nunez, 801 F.2d 1260, 1264 (11th Cir. 1986).  Intent is an essential element of contempt, see Woods v. State, 987 So. 2d 669, 676 (Fla. 2d DCA 2007) (citing Fla. Ventilated Awning Co. v. Dickson, 67 So. 2d 218, 219 (Fla. 1953)), and to support a conviction for direct criminal contempt, the trial court must have knowledge of each element of the contempt.  See In re Terry, 128 U.S. 289, 312 (1888) ("The judicial eye witnessed the act and the judicial mind comprehended all the circumstances of aggravation, provocation, or mitigation; and the fact being thus judicially established, it only remained for the judicial arm to inflict proper punishment.").  Each act or event

associated with a failure to appear that provides the basis for a charge of criminal contempt does not occur in the actual presence of the trial court, and, therefore, cannot constitute direct criminal contempt. Instead, should a failure to appear result in a charge of criminal contempt, a court must follow the procedures delineated by rule 3.840 governing indirect criminal contempt.

## CONCLUSION

We recede from our prior decision in Aron II and answer the certified question by holding that when a failure to appear results in criminal contempt proceedings, a charge of indirect criminal contempt is applicable, and the procedures of rule 3.840 must be followed. The First District below held that direct criminal contempt applied, but reversed the conviction based on insufficient evidence. Diaz de la Portilla, 142 So. 3d at 935. Therefore, although we conclude that direct criminal contempt does not apply to this case, we approve the decision of the First District to the extent that it reversed the conviction. See State Farm Fire & Cas. Co. v. Levine, 837 So. 2d 363, 365 (Fla. 2002) (stating that the tipsy coachman doctrine permits a reviewing court to affirm the decision of a lower court that reaches the right result for the wrong reason). We remand this case for proceedings consistent with this opinion.

It is so ordered.

LABARGA, C.J., and PARIENTE, QUINCE, POLSTON, and PERRY, JJ., concur.

- 17 -

CANADY, J., dissents with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

CANADY, J., dissenting.

In the decision on review, the First District reversed the trial court's order finding the respondent to be in direct criminal contempt. In the proceedings before this Court, the State has not sought to overturn the district court's reversal of the trial court's order. Instead, the State has sought an advisory opinion on the certified question. This Court should not be in the business of issuing advisory opinions except as specifically authorized by the Florida Constitution. "It is the rule that before a person may bring an appeal he must be a party or privy to the record and must show that he is, or will be, injuriously affected by the order sought to be reviewed." King v. Brown, 55 So. 2d 187, 188 (Fla. 1951). Accordingly, this case should be dismissed. I dissent.

Application for Review of the Decision of the District Court of Appeal - Certified Great Public Importance

First District - Case No. 1D11-5126

(Leon County)

Pamela Jo Bondi, Attorney General, and Trisha Meggs Pate, Bureau Chief, Tallahassee, Florida,

for Petitioner

Miguel Angel Diaz de la Portilla of Arnstein & Lehr LLP, Miami, Florida; Ricardo R. Corona and Ricardo Manuel Corona of the Corona Law Firm, P.A., Miami, Florida,

    for Respondent