800 So.2d 247 (2001)
Telisia Shaonte KELLEY, Petitioner,
v.
Everett S. RICE, Sheriff of Pinellas County, Respondent.
No. 2D01-2528.
District Court of Appeal of Florida, Second District.
October 5, 2001.
*249 Bob Dillinger, Public Defender, and Joy K. Goodyear, Assistant Public Defender, Clearwater, for Petitioner.
Robert A. Butterworth, Attorney General, Tallahassee, and Dale E. Tarpley, Assistant Attorney General, Tampa, for Respondent.
NORTHCUTT, Judge.
Telisia Shaonte Kelley petitions for a writ of habeas corpus. Several hours after her petition was filed in this courtand following our order directing an immediate response from the StateMs. Kelley was released from custody. The State now urges us to dismiss the petition as moot. Because of the serious errors apparent from the face of the record, and because the trial court is still attempting to exercise nonexistent jurisdiction over Ms. Kelley, we decline to do so. As explained in more detail below, we instead treat the petition as one invoking our certiorari and prohibition jurisdiction and grant relief.
The facts underlying this petition are troubling. Ms. Kelley, an eighteen-year-old woman who apparently has no criminal record, witnessed a violent crime committed against her brother. She remained at the scene and gave a statement to the police, and the alleged perpetrator of the offense was criminally charged. Some six months later the State attempted to subpoena Ms. Kelley and her brother to testify at the accused's trial, but it was unable to locate either of them in order to personally serve them. The first subpoena directed to Ms. Kelley[1] was returned with a notation that she had moved and left no forwarding address. A second one was left at that same address with a woman identified as Ms. Kelley's sister. A third subpoena was again returned from that same address with a notation that Ms. Kelley had moved and left no forwarding address.
Neither Ms. Kelley nor her brother appeared for the accused's trial, and eventually the charges against him were dismissed. Based on the subpoena left with Ms. Kelley's sister, the State sought and Circuit Judge Brandt Downey issued a writ of bodily attachment against Ms. Kelley for failing to appear in court to testify. Pursuant to the writ, Ms. Kelley was arrested several months later. She then was held without bond for four days before she was brought before Judge Downey, who then immediately conducted a summary hearing.
At the start of the hearing, the assistant state attorney discussed the facts of the underlying criminal case and alleged that Ms. Kelley was subpoenaed to testify at the trial but failed to appear. Judge Downey then lectured Ms. Kelley on her failure to appear and inquired whether she had anything to say. She responded that she had not received the subpoena because she was not living at the address where it was served. She assured the judge that if she had received the subpoena she would have come to court. Judge Downey replied that when he had reviewed the court file several months earlier he was convinced that she had been properly served.
*250 At no point during the brief hearing did Judge Downey inform Ms. Kelley of the charge against her, advise her that she had a right to counsel, or require the State to submit any evidence to support its allegation that Ms. Kelley intentionally failed to appear in response to a subpoena. Nonetheless, at the conclusion of the hearing Judge Downey found Ms. Kelley in contempt and sentenced her to serve four months in jail. He later signed a written judgment adjudicating her guilty of felony failure to appear. The public defender learned of this and filed the instant petition on Ms. Kelley's behalf.
Because of the serious errors alleged in the petition, we ordered an immediate, same-day response from the State. Shortly after our response order was issued, Judge Downey held a hearing at which he orally vacated Ms. Kelley's judgment and sentence. He initially ordered her held in custody pending the filing of a contempt charge against her, but on the public defender's motion he permitted Ms. Kelley's release on her own recognizance. As a condition of this release, he ordered her to appear at the state attorney's office to give a statement regarding the crime she had witnessed. He warned her that if she failed to do so a warrant would be issued for her arrest. This court was made aware of these subsequent developments through a supplemental petition and response filed here.

JURISDICTION
The State contends we should dismiss the petition as moot because Ms. Kelley has been released from custody. It is true that the matter is technically moot. See Bowles v. Singletary, 698 So.2d 1201, 1202 n. 3 (Fla.1997). However, mootness does not destroy a court's jurisdiction if the question raised is of great public importance or is likely to recur, id.; Holly v. Auld, 450 So.2d 217, 218 n. 1 (Fla.1984); Blalock v. Rice, 707 So.2d 738, 739 (Fla. 2d DCA 1997), or if the error is capable of repetition yet evading review. N.W. v. State, 767 So.2d 446, 447 n. 2 (Fla.2000). Because Judge Downey took action to moot this petition apparently in direct response to this court's involvement, and because it appears that in another of his cases the same errors may have been committed and evaded review, we address the merits of the petition.[2]
We also conclude that we have certiorari and prohibition jurisdiction to review Judge Downey's subsequent actions. Although he vacated Ms. Kelley's conviction and sentence and released her from custody, he did so in an order purporting to release her on recognizance with the condition that she appear at the state attorney's office. But Ms. Kelley has not been charged with contempt or any other crime. Therefore, Judge Downey lacks jurisdiction to release her on recognizance, to condition that release in any manner, or to order her rearrest if she violates those conditions. To the extent that Judge Downey has entered an order in excess of his jurisdiction, we may review it by means of certiorari. See Hudson v. Hofmann, 471 So.2d 117 (Fla. 2d DCA 1985). Insofar as Judge Downey has indicated an intent to continue exercising nonexistent jurisdiction over Ms. Kelley, we may prevent him from doing so by way of prohibition. See State ex. rel. Gillham v. Phillips, 193 So.2d 26 (Fla. 2d DCA 1966); Anderson Inv. Co. Ltd. v. Lynch, 540 So.2d 832 (Fla. 4th DCA 1988).

*251 MERITS
Our analysis of the merits turns in part on the nature of Ms. Kelley's conviction. The record is ambiguous in this respect, but it suggests four possibilities. The first is set forth in the written judgment, which purported to adjudicate Ms. Kelley guilty of failure to appear. As such, it was the product of a wholesale denial of Ms. Kelley's rights under the Florida Rules of Criminal Procedure and the Florida and Federal Constitutions. Beyond that, the written judgment conflicts with the judge's oral pronouncement at the hearing. See Driver v. State, 710 So.2d 652 (Fla. 2d DCA 1998).
According to the oral pronouncement, the judge found Ms. Kelley guilty of some unspecified variety of contempt. This, in turn, admits of three possibilities: civil, direct criminal, or indirect criminal. We eliminate civil contempt as a possibility because Judge Downey imposed a sentence which was clearly intended to punish and which could not be purged by Ms. Kelley's compliance with the prior court order. See Pugliese v. Pugliese, 347 So.2d 422 (Fla.1977).
Determining which category of criminal contempt applies to Ms. Kelley's conviction is more problematic. Direct criminal contempt results from conduct committed in the actual presence of the judge. It may be punished summarily pursuant to Florida Rule of Criminal Procedure 3.840. See Gidden v. State, 613 So.2d 457, 460 (Fla.1993). On the other hand, indirect criminal contempt concerns conduct outside the judge's presence and may be punished only after following the procedures set forth in rule 3.840. Gidden, 613 So.2d at 460. Ms. Kelley argues, and the State concedes, that the actions of which she was accused amounted to indirect criminal contempt. If so, the proceedings against Ms. Kelley plainly violated her due process rights as expressly delineated in rule 3.840. See Gidden, 613 So.2d 457; Andrews v. Walton, 428 So.2d 663 (Fla.1983).
Given the paucity of due process protections afforded Ms. Kelley in the court below, it is more likely that Judge Downey proceeded against her on a charge of direct criminal contempt. And, indeed, we have found authority for the proposition that a witness's failure to appear in court in response to a subpoena is direct, as opposed to indirect, criminal contempt. We disagree, but deem it necessary to examine this proposition in some depth.
Direct criminal contempt is defined by rule 3.830 as conduct that the court saw or heard committed in its actual presence. That rule further provides that such conduct may be punished summarily, with the court providing only the limited procedural protections of informing the defendant of the accusation, inquiring whether the defendant can show cause why he or she should not be held in contempt, and affording the defendant an opportunity to present evidence of excusing or mitigating circumstances. Fla. R.Crim. P. 3.830. The rule has been interpreted to allow summary punishment without appointment of counsel or a formal hearing. Williams v. State, 698 So.2d 1350 (Fla. 1st DCA 1997).
In order to understand and apply this seemingly simple definition and rule, it is necessary to consider its constitutional underpinnings. Due process requires that before a person may be convicted and sentenced to jail, she must be afforded reasonable notice of the charges against her and an opportunity to be heard which includes at a bare minimum the right to examine witnesses against her, the right to offer testimony, and the right to counsel. See In re Oliver, 333 U.S. 257, 273, 68 S.Ct. 499, 92 L.Ed. 682 (1948). *252 There is, however, an exception to this rule for a limited category of contempts. See id. at 275, 68 S.Ct. 499.
The narrow exception ... includes only charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent `demoralization of the court's authority before the public.'
Id. at 275, 68 S.Ct. 499 (quoting Cooke v. United States, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925)). Because the Constitution permits only this narrow category of contempts to be punished summarily in the manner described by rule 3.830, we assume that the direct criminal contempt defined in that rule is intended to encompass only this category.
Under this definition, Ms. Kelley's alleged conduct was not of the variety that could be constitutionally summarily punished. For one thing, Judge Downey did not have personal knowledge of one of the essential elements of the allegedly contemptuous conduct. Although he knew that Ms. Kelley did not appear in court for the trial, that failure was contemptuous only if Ms. Kelly knew she was required to come to court. Judge Downey had no personal knowledge regarding this.[3] Also, immediate punishment was not necessary to prevent demoralization of the court's authority. Ms. Kelley was punished some six months after her allegedly contumacious act.
We could end our discussion here, but for Aron v. Huttoe, 265 So.2d 699 (Fla. 1972). In Aron, the supreme court accepted review to determine "[w]hether a person who fails to appear at trial after having been properly subpoenaed may be brought into court during the trial and summarily held in contempt after failing to prove an adequate excuse." Id. at 700. The court did not specifically answer the certified question, but it adopted the district court's opinion which rejected a due process challenge to the summary procedure employed in that case. Id.
We conclude that Aron is not controlling because it is distinguishable from the instant case and is of questionable validity in light of more recent Florida Supreme Court decisions. We disagree with other district courts which have interpreted Aron broadly to hold that failing to appear in court pursuant to a court order may constitute direct criminal contempt. See Speer v. State, 742 So.2d 373 (Fla. 1st DCA 1999); Woods v. State, 600 So.2d 27 (Fla. 4th DCA 1992).[4]
It is important to note that the actual holding of Aron is much more limited than suggested by Speer and Woods. The district court in Aron held that the conduct at issue there could be characterized as "rule contempt" because the contemnor had violated Florida Rule of Civil Procedure 1.410(e).[5]Aron v. Huttoe, 258 So.2d 272, *253 273 (Fla. 3d DCA 1972). It provided that "[f]ailure of any person without an adequate excuse to obey a subpoena served upon him may be deemed a contempt of the court from which the subpoena issued." Id. at 273. The court then concluded that the only procedure required was the one set forth in that rule. Id.
Rule 1.410, applicable only in civil proceedings, does not govern Ms. Kelley's case. Therefore, the narrow holding of Aron that only the procedure under rule 1.410 is necessary to punish "rule contempt" similarly does not apply. We decline to expand Aron to this case because such would cause an unconstitutional result and contradict more recent precedent from our supreme court.
The more expansive interpretations given to Aron by other courts appear to rest on dicta in the district court opinion. After reaching its conclusion regarding the procedure necessary to punish rule contempt, the court went on to posit that, if the conduct in that case had to be classified as either civil or indirect or direct criminal contempt, it constituted direct criminal contempt. Id. at 273-74. The court reasoned that the contemptuous acts were committed in the trial judge's actual presence because the judge saw that the contemnor had not appeared at trial and "heard from counsel that the witness subpoenas... had been served on him." Id. at 274 (emphasis added).
Since Aron, however, the supreme court has expressly rejected a similar argument. In Pugliese v. Pugliese, 347 So.2d 422 (Fla.1977), the petitioner contended that the other party's conduct could be summarily punished as direct criminal contempt because the alleged contemnor, while in the judge's presence, admitted to contemptuous conduct which had occurred outside the judge's presence. The Pugliese court recognized that this argument would obliterate the distinction between indirect and direct criminal contempt because "the judge must always hear some testimony in his presence at a hearing on indirect contempt concerning conduct which took place outside his presence." Id. at 426. The court declined to accept any "notion that would expunge [that] distinction." Id. We interpret this as a repudiation of the suggestion in Aron that the contemptuous acts were considered to have been committed in the actual presence of the trial judge simply because the judge "heard from counsel that the witness subpoenas... had been served," Aron, 258 So.2d at 274, and we conclude that to the extent the supreme court had adopted that dicta, the court has since disavowed it.
Therefore, we decline to follow the holdings of Speer and Woods that a witness's failure to appear in response to a subpoena constitutes direct criminal contempt. We hold instead that if a witness in a criminal case fails to appear in court in response to a subpoena, that conduct may be punished, if at all, as indirect criminal contempt in accordance with the procedures outlined in rule 3.840. We believe that this holding is consistent with the constitutional requirements expressed in In re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682, and with our supreme court's more recent precedent addressing contempt proceedings. See Pugliese, 347 So.2d 422.
We conclude therefore that Ms. Kelley was entitled to the full panoply of due process rights afforded one accused of indirect criminal contempt. These rights are expressly included in rule 3.840, which delineates the steps that must be followed in order to constitutionally charge, adjudicate, and sentence someone for indirect criminal contempt. Judge Downey failed to follow any of those procedures.
*254 Although we have held that Ms. Kelley's alleged failure to appear in response to a subpoena could be punished only as indirect criminal contempt, we need not have reached that conclusion in order to determine that she was entitled to relief. Even if Judge Downey reasonably believed that Ms. Kelley's alleged conduct constituted direct criminal contempt under Aron, he still committed serious errors in the manner in which he proceeded against her.
Turning first to the explicit requirements of rule 3.830,[6] Judge Downey failed to inform Ms. Kelley of the accusation against her or to give her an opportunity to present evidence. See Fla. R.Crim. P. 3.830. Simply questioning Ms. Kelley regarding her nonappearance at trial and allowing a brief explanation was insufficient. See Davis v. State, 575 So.2d 288 (Fla. 3d DCA 1991). Judge Downey also failed to include in his written judgment a recital of the facts on which the adjudication of guilt is based, see Fla. R.Crim. P. 3.830, which alone constitutes reversible error in a direct criminal contempt proceeding. Williams, 698 So.2d at 1351. Last, the allegations made by the State, even considered with the subpoena found in the court file, were insufficient to support a conviction for direct criminal contempt. See, e.g., Werner v. State, 740 So.2d 591 (Fla. 5th DCA 1999).
More important though, simply labeling Ms. Kelley's conduct as direct criminal contempt does not alter the fact that she was entitled to the procedural due process required by In re Oliver, 333 U.S. at 275, 68 S.Ct. 499, unless her conduct fell within the narrow exception outlined in that case. Even if Judge Downey reasonably concluded that Ms. Kelley's conduct effectively occurred in his presence so as to constitute direct criminal contempt under Aron, he cannot have believed that immediate punishment was necessary "to prevent demoralization of the court's authority before the public," In re Oliver, 333 U.S. at 275, 68 S.Ct. 499, if for no other reason than the punishment was not imposed until some six months after the alleged conduct. See Hayes v. State, 592 So.2d 327 (Fla. 4th DCA 1992).
This alone constitutionally entitled Ms. Kelley to certain procedural protections in addition to those specifically provided for by rule 3.830. She was entitled at a minimum to reasonable notice of the charges against her, an opportunity to meet those charges, the right to be represented by counsel, and the chance to testify and call other witnesses. See In re Oliver, 333 U.S. at 275, 68 S.Ct. 499. See also Russ v. State, 622 So.2d 501 (Fla. 5th DCA 1993) (holding that notice of less than two days was not sufficient); Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972) (holding that an indigent person facing actual imprisonment is entitled to appointed counsel); Scott v. Illinois, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979) (holding the same). Judge Downey afforded her none of these rights.
Thus, even if we had determined that Ms. Kelley was not entitled to all of the procedural protections outlined in rule 3.840, we would still have concluded that Judge Downey committed substantial errors by both failing to comply with rule 3.830 and failing to provide Ms. Kelley even minimal procedural due process.

CERTIORARI AND PROHIBITION
As explained above, Judge Downey has since vacated Ms. Kelley's conviction *255 and sentence. In doing so, he committed additional errors which we conclude warrant the exercise of our certiorari and prohibition jurisdiction to correct. At the time of the second hearing, no order to show cause had issued and thus no contempt proceedings had been initiated against Ms. Kelley.[7] Judge Downey therefore had no lawful authority to condition Ms. Kelley's release in any manner or to threaten to have her rearrested if she failed to comply with the unlawfully imposed conditions.
We treat Ms. Kelley's supplemental petition in part as a petition for writ of certiorari, grant it, and quash the order releasing Ms. Kelley insofar as it purports to do so on recognizance conditioned on her appearance at the state attorney's office. In the absence of any pending charge against her, Ms. Kelley was simply entitled to be released.
We also treat Ms. Kelley's supplemental petition in part as a petition for writ of prohibition. At the hearing releasing Ms. Kelley, Judge Downey advised her that he would order her arrest if she violated the conditions of her release. Because no contempt proceeding has been instituted, Judge Downey has no lawful basis on which to order Ms. Kelley's arrest. We therefore grant the petition for writ of prohibition and restrain Judge Downey from ordering Ms. Kelley's arrest or otherwise attempting to exercise jurisdiction over her unless contempt proceedings or other criminal charges are properly initiated against her at some time in the future.
BLUE, C.J., and CASANUEVA, J., Concur.
NOTES
[1] The first subpoena commanded Ms. Kelley to appear for a deposition by the defense.
[2] According to documents attached to a supplemental petition filed by Ms. Kelley, under similar circumstances her brother also was arrested, found in contempt by Judge Downey, and sentenced to five months and twenty-nine days in jail. He was released the same day as Ms. Kelley, forty-nine days into his jail term.
[3] While Judge Downey could certainly take judicial notice of the subpoena and return of service in the court file, he could not take judicial notice of the fact of service. See Cordova v. State, 675 So.2d 632 (Fla. 3d DCA 1996).
[4] These cases may be distinguishable from the instant case in that they may have involved situations where the defendant was ordered by the trial judge to appear at a later date. Therefore, the trial judge would have had personal knowledge of all the elements of the contempt. Aron v. Huttoe, 265 So.2d 699 (Fla.1972), however, cannot be distinguished on that basis.
[5] The rule now appears as Florida Rule of Civil Procedure 1.410(f) but is otherwise unchanged.
[6] Because we need not reach this issue, we do not address at this time whether counsel is required even for true direct criminal contempt. Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); see also Hayes v. State, 592 So.2d 327 (Fla. 4th DCA 1992).
[7] To our knowledge, no order to show cause has issued against Ms. Kelley to date.