GERSTEN, C.J.,
dissenting.
I respectfully dissent on two grounds. First, neither the rules of criminal procedure nor well-established contempt jurisprudence require the trial court to issue a rule to show cause. Second and more importantly, sound public policy mandates discretion under the circumstances of this case.
The issue before us is clear: Does a trial judge have the discretion to deny the State’s request to issue a rule to show cause against the alleged victim of domestic violence when the victim does not want to testify? I believe that the answer is yes.
According to the State, the respondent, Theresa Jimenez, is a battered woman. The State properly subpoenaed her to appear for a pre-file conference to discuss charges brought against her alleged abuser. The respondent failed to appear. Thereafter, the State sought a rule to show cause under Florida Rule of Criminal Procedure 3.840, which governs indirect criminal contempt proceedings.
The trial judge clearly understood that the State wanted the alleged victim to cooperate in the criminal investigation. If, after issuing the rule to show cause, the victim still refused to testify, the next logical step would be the State’s request to have the victim arrested for contempt. The compassionate trial judge refused to issue the rule to show cause stating, “I am not going to start down a path, I’m not willing to finish.”
There is no denying that the State has the authority to issue investigative subpoenas and to seek the court’s enforcement in contempt proceedings against recalcitrant individuals. See §§ 27.04, 27.181(2), Fla. Stat. (2006); Kelley v. State, 800 So.2d 247 (Fla. 2d DCA 2001) (against a sister who witnessed violent crime against her brother); Valdez v. State, 555 So.2d 1311 (Fla. 1st DCA 1990) (against a mother for failure to appear in criminal case against her daughter’s molester); In re Getty, 427 So.2d 380 (Fla. 4th DCA 1983) (against a witness in drug case).
Nothing governing contempt, however, divests the court’s discretion to deny using its contempt power against a purportedly battered woman. Simply stated, rule 3.840 does not compel the trial court to issue a rule to show cause. Rather, rule 3.840(a) plainly states:
The judge, on the judge’s own motion or on affidavit of any person having knowledge of the facts, may issue and sign an order directed at the defendant, stating the essential facts constituting the criminal contempt charged and requiring the defendant to appear before the court to show cause why the defendant should not be held in contempt of court.
(emphasis added). In general and under the circumstances of this case, I would apply the following simple formula: “may = discretion.”
A court’s power to punish for contempt is well established. So too is the corresponding obligation of restrained use. See *387 Moakley v. Smallwood, 826 So.2d 221 (Fla.2002); Thomas v. State, 752 So.2d 679 (Fla. 1st DCA 2000); Harper v. State, 217 So.2d 591 (Fla. 4th DCA 1968).
Harper involved a statute prohibiting the presence of anyone, other than persons expressly allowed, in a grand jury session. The statute provided that any person in violation “may” be held in contempt of court. Harper, a prosecutor, permitted a non-allowed expert to assist in interrogating various witnesses before the grand jury. The trial court concluded that, under the statute, it had no choice but to sentence the prosecutor for contempt. On appeal, the Fourth District reversed because “the language employed and the proceedings generally” did not destroy the trial court’s discretion in the matter. Harper, 217 So.2d at 594.
Similar to Harper, this trial judge exercised his wise discretion stating his basis for not activating the mechanisms of a contempt order. In essence, even if the judge commanded the victim to appear in court, he was not willing to go further and incarcerate the battered woman should she refuse to testify. Thus, this legal inquiry should end with a judge’s discretionary call.
Turning next to public policy, I believe that it is sound public policy to give judges the discretion to issue a rule to show cause against a battered domestic violence victim. The reasons are myriad, and my further writings are both brief and not exhaustive.
First, a battered woman knows what is best for the well-being df her children and herself. Her foremost concern is necessarily the safety and welfare of her family. She may know or believe that it is more dangerous for her to appear and testify, than not. She may suspect that her testimony would result in a conviction of her partner. This, in turn, may adversely impact her ability to house or feed her family. It may also impact her ability to pay for the childcare which allows her to continue to work. Thus, her refusal to testify, in reality, may be an economic determination made to meet basic familial needs.
In addition, if a trial judge uses the powerful resources and coercive nature of the prosecutorial system, the victim may view the judicial system as another abuser in her life. She will feel that there is no place to turn for help, safety, or justice. It is certainly possible that by making the battered woman a victim of the judicial system, her natural reluctance to seek safety in the courts may, in the future, result in drastic harm to herself or her family.
Having said this, I recognize and sympathize with the State’s position. I understand that the reason the State is pursuing a rule to show cause is because the State wants to prosecute the batterer. Without testimony from their victims, many batterers may avoid conviction.
Florida, like many other jurisdictions, has a pro-prosecution policy for acts of domestic violence. See § 741.2901, Fla. Stat. (2006). This commendable policy, however, should not be carried to the point of putting the victim in jail to coerce her cooperation.
Consider the following scenario where a judge might have entered a rule to show cause against a domestic violence victim: The victim does not respond to the rale, and the court issues an order of arrest for contempt. Assume that the police stop the victim one week later, late Friday afternoon, for a traffic infraction. After a routine computer check, the police properly arrest her.
The police then place her in the county jail where she stays over the weekend. Her children are with a neighbor, school, *388 or daycare facility who expects the mother to pick them up that evening. Unaware of the arrest and unable to continue caring for the children, the neighbor, school, or daycare facility calls the police who, in turn, call the Department of Children and Families, who, in turn, pick up the children.
Meanwhile, on Monday, the victim is finally brought before the judge who issued the order. She decides to testify rather than stay in jail. Because the Department of Children and Families now has her children, she has to jump through multiple hoops to get them back. This process is arduous, confusing, and time-consuming.
The State has obtained the information it sought, but at a great expense to the victim. Should the reader believe such a scenario unlikely, a comparable situation occurred in Alaska during the early years of its domestic violence “no-drop” prosecution policy. See John Riley, Spouse-abuse Victim Jailed After No-Drop Policy Invoked, 5 Nat’l L.J. 4 (col.1) (Aug. 22, 1988).
Although it might be more difficult to prosecute the case without a victim, many cases have other evidence that the State can introduce. The progressive trend is “evidence based” or “victimless” domestic violence prosecution. This type of prosecution relies on the use of out-of-court statements and other physical evidence to establish the defendant’s guilt when the complaining witness refuses or is otherwise unable to cooperate with the prosecution. See David Jaros, The Lessons of People v. Moscat: Confronting Judicial Bias in Domestic Violence Cases Interpreting Crawford v. Washington, 42 Am. Crim. L.Rev. 995, 1001 (2005).
Further, if the victim is unwilling to come in and talk to the prosecutor, why would the victim testify against the defendant on the witness stand? If the victim does not testify truthfully or testifies for the defense, then the State will surely fail to convict the batterer. Additionally, the State must then consider whether to charge the victim with perjury. Thus, this tactic may again result in punishing the victim instead of the batterer.
In my mind, the better approach is to follow the example of our sister state, California. California specifically exempts victims of sexual assault and domestic violence from incarceration if they refuse to testify. See Cal.Civ.Proc.Code § 1219(b) (2007). Florida should consider clarifying the issue by enacting such a socially progressive rule. Regardless, I believe Florida, by rule 3.840, actually gives a judge the discretion of whether to issue a rule to show cause.
In conclusion, I believe that the majority’s opinion is contrary to the plain language and meaning of rule 3.840(a) and is against sound public policy. Again, I respectfully dissent.