NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

NED POLE,                                    )
                                             )
        Appellant,                        )
                                             )
v.                                           )        Case No.  2D14-4776
                                             )
STATE OF FLORIDA,                            )
                                             )
        Appellee.                         )
_____            )

Opinion filed August 10, 2016.

Appeal from the Circuit Court for Polk
County; Jalal Harb, Judge.

Howard L. Dimmig, II, Public Defender, and
Lisa Lott, Assistant Public Defender,
Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Johnny T. Salgado,
Assistant Attorney General, Tampa, for
Appellee.


LaROSE, Judge.


        Ned Pole appeals his conviction and sentence for direct criminal

contempt.  We have jurisdiction.  See Fla. R. App. P. 9.140(b)(1)(A).  He argues that he

was entitled to counsel at the contempt hearing.  The trial court did not comply with the

requirements for conducting a direct criminal contempt proceeding under the procedural

protections of Florida Rule of Criminal Procedure 3.830.  We also conclude that Mr. Pole's conduct, at most, constituted indirect criminal contempt to which the protections of Florida Rule of Criminal Procedure 3.840 apply.  Accordingly, we reverse and direct the trial court to vacate the contempt order.

Relevant Facts

The contempt proceeding against Mr. Pole stemmed from a divorce action filed by his wife.  The trial court scheduled a final hearing on this civil matter for the morning of September 8, 2014.  On September 3, Mr. Pole filed a pro se motion to continue the hearing.  He claimed that he was unemployed and unable to obtain counsel.  The trial court denied the motion.  Our record does not indicate whether Mr. Pole received a copy of the order denying his motion prior to the scheduled final hearing.

Because we do not have a complete transcript of the September 8 proceeding, we can glean what happened only from the text of the contempt order.  Apparently, Mr. Pole called the trial court that morning to inquire about his motion to continue; he learned that the trial court had denied the motion.  Mr. Pole said that he would be about thirty minutes late for the hearing.  Mr. Pole arrived thirty-eight minutes late looking disheveled and acting "somewhat confused."  Mr. Pole disclaimed receipt of an earlier voicemail message notifying him that his continuance request was denied. He volunteered that he had drunk two beers the prior evening.  He denied being under the influence of alcohol, medication, or illegal drugs.  Yet, Mr. Pole "kept interrupting the Court as the Court explained to him the ruling on his request to continue.  His interruptions continued throughout the proceedings."  Rather than initiate contempt proceedings at this point, it appears that the trial court, at Mr. Pole's suggestion,

directed him to the drug lab for drug and alcohol testing. The results were negative for drugs, but positive for alcohol; the breathalyzer readings were .208 and .216.

The trial court then informed Mr. Pole that it was conducting a direct criminal contempt hearing as a result of his behavior. The trial court reminded him that he was late and concluded that he was under the influence of alcohol. The conduct "embarrassed, hindered and obstructed th[e] Court in the administration of justice and/or his actions interfered with a judicial function. . . . [D]ue to his actions, the Final Hearing [in the dissolution action] ha[d] to be continued because the allocated time had expired and . . . he was not in a condition to represent himself."

The trial court gave Mr. Pole an opportunity to show cause why he should not be held in direct criminal contempt. He repeated that he had only two beers the night before. Mr. Pole stated that he did not drive to the courthouse himself because he did not want to violate the law. Mr. Grimm, who had driven Mr. Pole to the courthouse that morning, testified that when he arrived at Mr. Pole's home, Mr. Pole was not ready. Mr. Grimm suspected that Mr. Pole was under the influence of alcohol. The trial court held Mr. Pole in direct criminal contempt, adjudicated him guilty, and sentenced him to fifteen days in jail. On appeal, Mr. Pole argues that the trial court should have given him an opportunity to seek counsel for the contempt hearing.

<u>Plank v. State</u> and the Contemnor's Right to Counsel

Our precedent holds that a contemnor is entitled to counsel in a direct criminal contempt proceeding. <u>Al-Hakim v. State</u>, 53 So. 3d 1171, 1174 (Fla. 2d DCA 2011); <u>Woods v. State</u>, 987 So. 3d 669, 674 (Fla. 2d DCA 2007). The Fourth District agrees. <u>See</u> <u>Hayes v. State</u>, 592 So. 2d 327, 329 (Fla. 4th DCA 1992). However, the First District holds otherwise. <u>See</u> <u>Plank v. State</u>, 130 So. 3d 289, 290 (Fla. 1st DCA

- 3 -

2014).  Because of this interdistrict conflict, the supreme court agreed to hear Plank to determine "whether an individual is entitled to counsel in direct criminal proceedings before incarceration is imposed as punishment."  Plank v. State, 190 So. 3d 594, 596 (Fla. 2016); see art. V, § 3(b)(3), Fla. Const.; Fla. R. App. P. 9.030(a)(2)(A)(iv).  We anxiously awaited the supreme court's opinion in Plank, hoping for guidance on the conflict issue.  The supreme court issued its Plank decision on March 17, 2016.  The decision is now final; the mandate issued on April 14, 2016.  Apparently, neither the State nor Mr. Plank sought rehearing.  See Florida Supreme Court Case Docket: Case Number: SC14-414, Florida Supreme Court, http://jweb.flcourts.org/pls/docket/ds_docket (last visited May 4, 2016).

It is not evident to us, however, that the supreme court resolved the conflict issue.  Three justices joined in an opinion concluding that there is no right to counsel in a direct criminal contempt proceeding as long as any incarceration does not exceed six months.  Plank, 190 So. 3d at 596.  These three justices also concluded that Mr. Plank's conviction should be vacated because his conduct amounted to no more than indirect criminal contempt.  Id.  One justice concurred in result only.  Id.  The three remaining justices agreed that Mr. Plank's conduct did not constitute direct criminal contempt and concurred in the opinion to the extent it vacated Mr. Plank's conviction.  Id. at 608.  These justices, however, thought that Mr. Plank had a right to counsel in a direct criminal contempt proceeding.  Id.  Thus, six justices joined in an opinion holding that Mr. Plank had not committed direct criminal contempt.  No majority joined an opinion resolving the conflict issue.

"Under the Florida Constitution, both a binding decision and a binding precedential opinion are created to the extent that at least four members of the Court

- 4 -

have joined in an opinion and decision." Santos v. State, 629 So. 2d 838, 840 (Fla. 1994) (citing art. V, § 3(a), Fla. Const.). "In [this] context . . . , a 'decision' is the result reached by the Court in the case, as distinguished from the 'opinion.' " Id. at 840 n.1. "A concurring in result only opinion indicates agreement only with the decision, that is, the official outcome and result reached, but a refusal to join in the majority's opinion and its reasoning." Harry Lee Anstead, Gerald Kogan, Thomas D. Hall & Robert Craig Waters, The Operation and Jurisdiction of the Supreme Court of Florida, 29 Nova L. Rev. 431, 460 (2005); see also Byrd v. State, 880 So. 2d 616, 617 (Fla. 2004) (holding that First District opinion declaring statute invalid was not the actual decision of the district court because only one of three judges signed it and the other two judges concurred in result—affirming the trial court's denial of Byrd's motion to dismiss—but did not join in the opinion); Floridians for a Level Playing Field v. Floridians Against Expanded Gambling, 967 So. 2d 832, 834 (Fla. 2007) (holding that vote of an appellate court judge concurring in the judgment without indicating agreement with decision to certify question did not count as agreeing with certification).

Because Plank was a three-three decision on the right to counsel in a direct contempt proceeding, the supreme court, apparently, did not resolve the certified conflict between the First District in Plank and the Second and Fourth Districts in Al-Hakim, 53 So. 3d 1171; Woods, 987 So. 3d 669; and Hayes, 592 So. 2d 327. Because six justices concurred in an opinion concluding that Mr. Plank's conduct did not amount to direct criminal contempt, Plank does not require us to dwell much longer on the conflict issue pressed before the supreme court and raised by Mr. Pole, here.

## The Need for an Adequate Record

As guidance for our able and busy trial judges, however, we note, as an initial matter, that to affirm a conviction of direct criminal contempt, "there must be evidence in the record that the trial court complied with the procedural requirements of Fla. R. Crim. P. 3.830 . . . for prosecuting a direct criminal contempt." Chamberlain v. Chamberlain, 588 So. 2d 20, 23 (Fla. 5th DCA 1991). "[T]he contemnor's right to due process require[s] that the trial court ensure that a record is made of a criminal contempt proceeding. . . . [F]acially sufficient claims on plenary appeal from an adjudication of contempt . . . which cannot be refuted by the record will invariably mandate vacation of the judgments." Blalock v. Rice, 707 So. 2d 738, 740 (Fla. 2d DCA 1997); see also Chamberlain, 588 So. 2d at 23 (stating that the trial court must "ensure that a record of the entire sentencing proceeding is made and preserved in such a manner that it can be transcribed as needed" (quoting Fla. R. Crim. P. 3.721)). Our record includes a transcript of only the beginning of the dissolution hearing. The courtroom clerk announced, "And per the Judge we don't need to be on the record." Both parties acknowledge that the contempt proceeding was not recorded.

Because we do not have a full record of the contempt proceeding, our appellate review is stymied. We recognize that the contempt proceeding against Mr. Pole arose in a civil division of the circuit court. Although a court reporter was present, we are also aware that many civil matters commonly proceed without a court reporter. Because the trial court went forward with a criminal proceeding a different set of rules applied. On this basis, alone, we would be compelled to reverse.

Even if armed with a complete record, we would still reverse because the trial court mischaracterized Mr. Pole's misconduct as direct criminal contempt. Plank guides our reasoning. We must, briefly, return to the facts in Plank. While providing background information as a prospective juror, "[Mr. Plank] responded that he should not have to serve on a jury because he was 'able to evade the military draft,' worked thirteen-hour days, had a '4F' military designation, and was a drunk." Plank, 190 So. 3d at 598. Mr. Plank slept during some of jury selection. Id. at 598-99. Some jurors complained that he smelled of alcohol and that they had trouble waking him up at a break. Id. at 599. The trial court directed an officer to administer a breathalyzer test, which occurred outside the judge's presence. Id. at 597.

An hour later, the trial judge held a contempt hearing. Id. The trial court informed Mr. Plank that his blood alcohol level was .111 and expressed its belief that Mr. Plank may have driven to the courthouse under the influence of alcohol. Id. at 597-98. Mr. Plank testified that he had worked late delivering magazines and had "only" a couple of beers in the morning. Id. at 599.

The trial court found Mr. Plank in direct criminal contempt for being drunk, disrupting jury selection, and distracting other jurors. Id. at 598. The trial court sentenced him to thirty days in jail. Id. at 599. On appeal, Mr. Plank argued that he was entitled to seek counsel for the direct contempt proceeding. Id. The First District affirmed. Plank v. State, 130 So. 3d 289, 290 (Fla. 1st DCA 2014). As discussed earlier, six members of the supreme court—three members in the decision and three in Justice Pariente's concurrence—agreed to reverse, concluding that the trial court erred in failing to appoint counsel for Plank because his conduct did not involve direct criminal

contempt.  Plank, 190 So. 3d at 600 (LaBarga, C.J., and Lewis and Polston, JJ.), 608 (Pariente, Quince, and Perry, JJ., concurring in part and dissenting in part).

"In order to be considered direct criminal contempt, all of the acts underlying the contemptuous conduct must be committed in open court in the presence of the judge, 'where all of the essential elements of the misconduct are under the eye of the court [and] are actually observed by the court.' "  Id. at 606 (quoting In re Oliver, 333 U.S. 257, 275 (1948)); see also Fla. R. Crim. P. 3.830 ("A criminal contempt may be punished summarily if the court saw or heard the conduct constituting the contempt committed in the actual presence of the court.").  Otherwise, the allegedly contemptuous conduct is indirect criminal contempt, subject to the more generous procedural safeguards set forth in rule 3.840.  Plank, 190 So. 3d at 606; Kelley v. Rice, 800 So. 2d 247, 251 (Fla. 2d DCA 2001).  "Whenever a judge must take testimony during a criminal contempt proceeding or rely on additional evidence not directly observed by the trial judge, the proceeding is no longer direct criminal contempt but becomes indirect criminal contempt."  Plank, 190 So. 3d at 607.  "[K]nowledge acquired from the testimony of others, or even from the confession of the accused, would not justify conviction without a trial in which there was an opportunity for defense."  In re Oliver, 333 U.S. at 275.

The supreme court explained why Mr. Plank's conduct was indirect, rather than direct, criminal contempt, as follows:

> In determining whether Plank committed criminal contempt, the trial judge took testimony from a probation officer regarding Plank's blood-alcohol level after the officer administered a breathalyzer test.  In addition, the trial judge relied on off-the-record statements from the jurors that Plank smelled of alcohol and Plank's own admissions that he drank before attending jury duty and that he drove to the courthouse.

Plank, 190 So. 3d at 606.  Similarly, here, the trial judge took testimony from Mr. Grimm concerning Mr. Pole's behavior before arriving at the courthouse.  The trial court relied on Mr. Pole's own admissions that he drank two beers the previous night and did not drive to the courthouse so as not to break the law.  The trial court also relied on lab results obtained outside its presence.

"[B]ecause of the summary nature of the procedures in direct criminal contempts, any doubt as to the category in which the act falls should be resolved in favor of the contemnor."  Fisher v. State, 248 So. 2d 479, 488 (Fla. 1971); accord Turner v. State, 283 So. 2d 157, 160 (Fla. 2d DCA 1973).  Based on Plank, we conclude that the trial court erred in failing to allow counsel for Mr. Pole because the conduct at issue did not involve direct criminal contempt.  See Fla. R. Crim. P. 3.840(d).  Therefore, we reverse Mr. Pole's conviction for direct criminal contempt and direct the trial court to vacate the order on appeal.

## Conclusion

Reversed and remanded for proceedings consistent with this opinion.


CASANUEVA, J., Concurs with opinion.
LUCAS, J., Concurs in part and dissents in part.

CASANUEVA, Judge, Concurring.

Unlike most cases this court reviews in which a person has lost their liberty, the primary factual record before us is the trial court's order. In its order, the trial court found Mr. Pole in direct criminal contempt based on Mr. Pole's behavior in court, the testimony of Mr. Pole, the results of the alcohol test, and the testimony of Mr. Grimm at the contempt proceeding. As noted in the respective opinions of Judges LaRose and Lucas, the sequence of events impacts the analytical outcome of whether the trial court punished for a direct criminal contempt or an indirect criminal contempt. Here, the trial court's order fails to identify the order in which most of the events occurred. Assuming the alcohol test was performed before the criminal contempt hearing, the proceeding involved indirect, not direct, criminal contempt.

In my view, the burden of providing a record in instances such as this rests with the trial court. It is the trial court which seeks to exercise its authority to punish by depriving the alleged offender of his liberty. Accordingly, I join in the section of Judge LaRose's opinion regarding the need for an adequate record in contempt proceedings. Further, as Judge LaRose noted in his opinion, where there are any doubts as to whether a contempt proceeding involves direct or indirect criminal contempt, the category in which the proceeding falls should be resolved in favor of the contemnor. Consequently, the record in this case should be interpreted to indicate that the alcohol test was performed before the trial court conducted the contempt hearing. Accordingly, I join Judge LaRose's opinion to reverse the conviction for direct criminal contempt and to vacate the order.[1]

---

[1]Although it is not necessary to determine if a right to counsel exists in this instance because it is not essential to the resolution of the case, in examining that

Although in this instance I did not join Judge Lucas's opinion, I do agree with a primary conclusion he reached when addressing the "assumption that the Florida Rules of Criminal Procedure hold their own innate, organic power to require the appointment of counsel in a summary contempt proceeding."  In this context, I agree fully with his analysis that "[a] rule of procedure cannot create a substantive right that would not otherwise exist."

A right to counsel must originate from either the national or state constitution or by federal or state legislation.  In the first instance, the right is provided by voters and their ratification of the constitutional provision in question; in the legislative arena, the right flows from the representatives of the citizens.  To afford the judicial branch with the power—through the passage of rules of procedure—to grant such rights appears to me to be contrary to the separation of powers delineated by the constitution.

---

issue, it appears that the cases of In re Oliver, 333 U.S. 257 (1948), and Commonwealth v. Moody, 125 A.3d 1 (Pa. 2015), would provide a good starting point for such analysis.

LUCAS, Judge, Concurring in part and dissenting in part.

The record before us is admittedly scant, but it illustrates a not uncommon occurrence that sometimes frustrates the work of our trial courts—when someone disturbs the course of a court proceeding. I do not believe that our review here has been stymied from the lack of a transcript or that the proceeding against Mr. Pole was anything other than the summary direct criminal contempt proceeding that the circuit court's order stated it was. Therefore, I respectfully dissent from the majority's decision to construe the proceeding below as something that, I believe, it was not.

Because I conclude that Mr. Pole was indeed subjected to a direct, not an indirect, criminal contempt proceeding, I would confront the issue Mr. Pole argued in his appeal—his right to counsel in a summary direct criminal contempt proceeding. On that point, I would distance our court's jurisprudence, as much as possible, from what I believe were the erroneous underpinnings of Woods, 987 So. 2d 669, and its progeny case, Al-Hakim, 53 So. 3d 1171. Nevertheless, inasmuch as those decisions remain intact and stare decisis binds us to follow them, I reluctantly concur, based on their continuing authority, with the majority's decision to reverse Mr. Pole's conviction.

I.

The circuit court's order describes the procedural history that preceded what was supposed to have been a final hearing in Mr. Pole's case. Apparently, Mr. Pole showed up late and intoxicated for his dissolution of marriage trial. An inauspicious beginning to any kind of court proceeding, to be sure, but his misconduct did not end there. According to the circuit court's findings, besides being late, Mr. Pole "kept interrupting the [c]ourt," his "interruptions continued throughout the proceedings," and the trial had to be continued because "the allocated time had expired and . . . [Mr.

- 12 -

Pole] was not in a condition to represent himself." By his misconduct, Mr. Pole effectuated the very continuance the court had previously denied.

The court informed Mr. Pole that it was convening a summary direct criminal contempt hearing "as a result of his behavior." According to the order's findings, the court properly afforded Mr. Pole an opportunity to present testimony to show cause why he should not be adjudicated guilty, as well as to present evidence of excuse or mitigating circumstances. See Fla. R. Crim. P. 3.830. The court allowed Mr. Pole to present a witness who was in attendance, a Mr. Grimm, whose testimony, according to the court's mention of it, could fairly be characterized as collateral to the issue of Mr. Pole's conduct. The order also references drug and alcohol testing that Mr. Pole "agreed to submit to," presumably, during his presentation of evidence and testimony. The court then adjudicated Mr. Pole guilty of direct criminal contempt, citing the applicable procedural rule for a summary procedure, rule 3.830, and sentenced him to fifteen days in the Polk County Jail.

The majority construes the record we have as one evincing an indirect criminal contempt proceeding.[2] As such, citing to Plank, 190 So. 3d at 602, and Kelley, 800 So. 2d at 251 (Fla. 2d DCA 2001), the majority concludes that Mr. Pole was entitled to a proceeding "subject to the more generous procedural safeguards set forth in rule 3.840," including the right to court-appointed counsel. I respectfully disagree. The circuit

---

[2]Mr. Pole never argued this point until after we directed supplemental briefing from the parties following the release of the Florida Supreme Court's decision in Plank, 190 So. 2d 594. In terms of the record before us, I, too, am troubled by the lack of a hearing transcript (perhaps more so than Mr. Pole, who did not argue this point either). However, since I do not believe a summary contempt proceeding can be likened to a "criminal prosecution," see infra n.4, I am not prepared to hold, as the majority appears to, that the failure to have a court reporter record and transcribe a summary contempt proceeding amounts to fundamental error.

- 13 -

court's findings sufficiently describe conduct that occurred "in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, [and] are actually observed by the court." In re Oliver, 333 U.S. at 275 (1948) (quoting Cooke v. U.S., 267 U.S. 517 (1925)). Mr. Pole delayed the start of his trial by appearing more than a half hour late; when he arrived, he interrupted the presiding judge, repeatedly; and, if we accept the court's assessment, he was in "no condition to represent himself"; all of which culminated in the court having to continue his trial over an opposing party's prior objection and in contravention of the court's prior ruling. Regardless of whether his conduct was the result of alcohol consumption, or boorish manners, stress, or some other concoction of influences that arose before he came to court, it was clearly Mr. Pole's disruptive behavior *during court* that gave rise to the summary proceeding against him.

Now it is true that if the summary proceeding and the court's adjudication had been predicated on first obtaining the results of Mr. Pole's drug and alcohol test— that is, if the presiding judge had to rely on any evidence outside of what he witnessed first-hand—then the court could not have convened a summary proceeding for direct criminal contempt against Mr. Pole. See In re Oliver, 333 U.S. at 275; Plank, 190 So. 3d at 596; Bryant v. State, 851 So. 2d 823, 824-25 (Fla. 2d DCA 2003) (vacating judgment and sentence for direct criminal contempt based on defendant's shouting obscenities as she walked by a courtroom where the State had to produce a witness to describe what had transpired and what the defendant had said). But I do not believe that is what occurred here. Rather, as I read this order, Mr. Pole voluntarily agreed to have a drug and alcohol test during the summary proceeding. It does not appear to me

- 14 -

that this circuit judge predicated convening the summary proceeding on first obtaining the results of a court-ordered alcohol test or that he premised the guilty adjudication or sentence on the results of that test,[3] unlike the circuit judge in Plank, who very clearly did both.  190 So. 3d at 597 (noting that, after receiving complaints about prospective juror's apparent intoxication, defendant was ordered to take a breathalyzer test outside of court, following which, "an hour later . . . the trial judge held a contempt hearing").  If Mr. Pole's behavior, if his contumacious conduct, could be characterized as having occurred outside of the presiding judge's presence, then I would agree with the majority's approach and analysis.  But I am of the opinion that Mr. Pole's proceeding was, as the circuit court informed him, a summary direct criminal contempt proceeding—properly convened because he disrupted his trial to the point that it had to be canceled.

## II.

I turn now to the issue Mr. Pole originally pursued in this appeal, his right to counsel.  Relying on this court's precedent in Al-Hakim, 53 So. 3d 1171, Mr. Pole contends that his conviction must be reversed because he was not appointed counsel at any point before or during his contempt hearing.  As the majority observes, the issue of whether a defendant has the right to court-appointed counsel in a summary direct criminal contempt proceeding was (and still is) a point of conflict among three district courts of appeal, including ours.  Compare Al-Hakim, 53 So. 3d 1171 (holding that an

---

[3]The reference to Mr. Pole agreeing to submit to a drug and alcohol test is within a subheading of the order that reads, "The testimony of Mr. Pole."  Other than recounting the results of his drug and alcohol testing in a subsequent section of the order, it does not appear that the circuit court relied on those test results in its decision to convene the summary proceeding or in its adjudication and sentence.

indigent defendant has the right to court-appointed counsel in a summary direct criminal contempt proceeding), and Hayes, 592 So. 2d at 329 (Fla. 4th DCA 1992) (same), with Plank, 130 So. 3d at 290 (Fla. 1st DCA 2014) (certifying conflict with Al-Hakim and holding that the Sixth Amendment does not confer a right to counsel in a summary direct criminal contempt proceeding).  I share the majority's assessment that the supreme court in Plank neither resolved the conflict issue before it nor reversed our court's pronouncement in Al-Hakim concerning the right to counsel in summary direct criminal contempt proceedings.  On that discrete issue, no opinion in Plank garnered a majority: three justices rejected the notion that a right to counsel exists on any basis, 190 So. 3d at 596; three believed that it does (or, at least, could) on multiple bases, id. at 608; and the seventh justice concurred only in the result of quashing the affirmance of the defendant's conviction for direct criminal contempt, id. at 596.  Thus, we are left with our court's precedent in Al-Hakim and that case's origin, Woods.  The central holdings in these cases—whether tinged or buttressed by the competing opinions in Plank—still stand and must, therefore, be examined and applied to Mr. Pole's case.

A.

In Woods, we declared—for the first time in this district—that an indigent defendant is entitled to court-appointed counsel in a summary direct criminal contempt proceeding initiated by a presiding judge. 987 So. 2d at 676.  Although the Woods opinion included an extensive exposition on the development of constitutional law concerning this "difficult and . . . unresolved issue," id. at 674, our court purposely avoided a constitutional justification for our holding.  Instead we fashioned this expansion of the right to counsel in summary contempt proceedings from a less-than-

- 16 -

obvious reading of our State's rules of criminal procedure—in particular, Florida Rules of

Criminal Procedure 3.010 and 3.111:

> The trial court's failure to ensure that Mr. Woods
> actually had counsel present to represent him regarding the
> alleged direct criminal contempt violates the Florida Rules of
> Criminal Procedure, even if it is unclear whether that action
> violates federal constitutional law.  Although the
> constitutional dimension of this issue is worthy of careful
> consideration, the issue in this case is actually resolved by
> the requirements of a lowly rule of criminal procedure.
>
> The Florida Rules of Criminal Procedure apply in all
> criminal proceedings in Florida state courts "including
> proceedings involving direct and indirect criminal contempt."
> Rule 3.111(a) provides for appointment of counsel at first
> appearance, and rule 3.111(b) requires counsel for indigent
> persons in all prosecutions for offenses punishable by
> incarceration.

Id. at 674.  Drawing these rules together, we concluded in Woods "that the Florida

Rules of Criminal Procedure required the availability of appointed counsel" for a

summary direct criminal contempt "prosecution."  Id.  Later, in Al-Hakim, we reiterated

that rule 3.111(b) requires the appointment of counsel in a summary direct criminal

contempt proceeding, notwithstanding rule 3.830's silence on that subject.  53 So. 3d at

1173-74.[4]  The provisions within rule 3.111(b), we held, required the presiding judge "to

---

[4]Trying to parse procedural rules to answer the constitutional question of whether a defendant has the right to counsel in summary contempt proceedings is, I believe, a discursive approach to the problem.  But even if we assume that the rules of criminal procedure could somehow corner the entirety of this constitutional issue within their text, our court's interpretation of that text was likely flawed.  As we acknowledged in Al-Hakim, rule 3.830, the operative rule that "outlines the procedural requirements for direct criminal contempt," does not require the appointment of counsel in a summary direct criminal contempt proceeding.  53 So. 3d at 1173.  Rule 3.830 begins: "A criminal contempt may be punished summarily if the court saw or heard the conduct constituting the contempt committed in the actual presence of the court."  To my reading, that provision is clear and unambiguous.  Thus, in Woods and Al-Hakim, we elevated rule 3.830's silence concerning rule 3.111(b)'s requirement to appoint counsel to effectively abrogate the plain language of rule 3.830.  See Brown v. State, 715 So. 2d 241, 243

determine whether Mr. Al-Hakim was indigent and therefore entitled to the appointment of counsel in this direct criminal contempt proceeding in which Mr. Al-Hakim, a member of the public, was taken into custody." Id. at 1174.

B.

Left unsaid in Woods and Al-Hakim was the assumption that the Florida Rules of Criminal Procedure hold their own innate, organic power to require the

---

(Fla. 1998) (holding that rule of criminal procedure, if unambiguous, "must be accorded its plain and ordinary meaning" and observing that statutory rules of construction also apply to the construction of procedural rules); cf. Jones v. ETS of New Orleans, Inc., 793 So. 2d 912, 914-15 (Fla. 2001) ("A basic tenet of statutory interpretation is that a 'statute should be interpreted to give effect to every clause in it, and to accord meaning and harmony to all of its parts.' " (quoting Acosta v. Richter, 671 So. 2d 149, 153-54 (Fla. 1996))). We also ignored the plain language in rule 3.840, governing indirect criminal contempt proceedings, which clearly addresses appointment of counsel. See Fla. R. Crim. P. 3.840(d) ("The defendant is entitled to be represented by counsel . . . ."). Although not binding, it appears that three of the justices in Plank were inclined to reject our court's interpretation of the rules of criminal procedure on this point, as well:

> Plank's last contention is that he was entitled to the appointment of counsel based on [rule] 3.111(b) . . . . Rule 3.111(b) requires the appointment of counsel for indigent persons "in all criminal prosecutions for offenses punishable by incarceration." However, this general rule does not trump the specific rule governing direct criminal contempt, [rule] 3.830, which specifically addresses the procedures that govern direct criminal contempt proceedings.
>
> . . . .
>
> In contrast, [rule] 3.840 governs indirect criminal contempt, which involves conduct committed outside the presence of the court. Subsection (d) of rule 3.840 explicitly provides that a defendant is entitled to be represented by counsel at the contempt hearing. . . . Under our precedent, a specific rule trumps a general rule. Thus, applying that principle here, the specific rule governing direct criminal contempt trumps a general rule pertaining to the right to counsel.

190 So. 3d at 603 (citations omitted).

appointment of counsel in a summary contempt proceeding.  They assuredly do not.  A rule of procedure cannot create a substantive right that would not otherwise exist.  See, e.g., Haven Fed. Sav. & Loan Ass'n v. Kirian, 579 So. 2d 730, 732 (Fla. 1991) (explaining distinction between substantive and procedural law; "[s]ubstantive law has been defined as the part of the law which creates, defines, and regulates rights" (citing State v. Garcia, 229 So. 2d 236 (Fla. 1969))); Williams v. State, 932 So. 2d 1233, 1237 (Fla. 1st DCA 2006) (holding that professional standards for lead counsel in capital cases described in rule 3.112(f) did not create an independent "right" to counsel who met those qualifications, and remarking that "[s]ubstantive law creates substantive rights; rules of procedure . . . 'merely provide the remedies to enforce rights' " (quoting State v. Dorian, 619 So. 2d 311, 313 (Fla. 3d DCA 1993))); cf. In re Florida Rules of Criminal Procedure, 272 So. 2d 65, 65-66 (Fla. 1972) (Adkins, J., concurring) ("Practice and procedure encompass the course, form, manner, means, method, mode, order, process or steps by which a party enforces substantive rights or obtains redress for their invasion.  'Practice and procedure' may be described as the machinery of the judicial process as opposed to the product thereof."); Birnholz v. 44 Wall St. Fund, Inc., 880 F.2d 335, 339 (11th Cir. 1989) (observing that procedural rules are "legal machinery and not a fountain of legal rights").  The rules of criminal procedure are no exception.  A constitutional right to counsel in a summary direct contempt proceeding could only emanate from a provision within the constitution.  Our holdings in Woods and Al-Hakim should never have thrust so much jurisprudential freight upon a "lowly rule of criminal procedure," 987 So. 2d at 674, or on any other rule of procedure.  It is a weight no procedural rule was meant to carry.

If Mr. Pole has a constitutional right to counsel in a summary direct criminal contempt proceeding—and I do not believe that he does, at least under the Sixth Amendment[5]—then it must derive from a provision found within the State or Federal constitutions, not from a novel interpretation of our state's rules of criminal procedure.  See Plank, 190 So. 3d at 602 (Labarga, C.J., and Lewis, and Polston, JJ., concurring) ("Plank does not have a Sixth Amendment right to counsel prior to being incarcerated for direct criminal contempt, as long as the period of incarceration does not exceed six months.").  Whether the constitution affords that right in these proceedings is indeed a topic "worthy of careful consideration," Woods, 987 So. 2d at 674, but our precedent, unfortunately, would seem to foreclose its consideration at all.

---

[5]The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." Similarly, article I, section 16 of the Florida constitution guarantees that "[i]n all criminal prosecutions the accused . . . shall have the right . . . to be heard in person, by counsel[,] or both."  A summary direct criminal contempt proceeding would not seem to fall within the textual or original meaning of a "criminal prosecution," because summary contempt proceedings are not commenced by the State, are not truly "adversarial" in nature (insofar as there is no opposing party or adverse litigant), and, by virtue of their summary nature, purposely exclude most of the formal requirements of criminal cases such as the filing of a formal charge, indictment, or information, holding an arraignment, or affording the right to a trial by jury.  Cf. Moore v. Illinois, 434 U.S. 220, 226-27 (1977) (clarifying that the right to counsel applies "only to corporeal identifications conducted at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment. This is so because the initiation of such proceedings marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable."); U.S. v. Wilson, 421 U.S. 309, 316 (1975) ("The face-to-face refusal to comply with the court's order itself constituted an affront to the court, and when that kind of refusal disrupts and frustrates an ongoing proceeding . . . summary contempt must be available to vindicate the court's authority . . . ."); Searcy v. State, 971 So. 2d 1008, 1013-14 (Fla. 3d DCA 2008) (noting that summary direct criminal contempt proceedings pose "an exceptional situation as the charging court is afforded significant power to act simultaneously and summarily as prosecutor, witness, and judge. . . .  [A]n individual charged with direct criminal contempt neither enjoys a right to a formal hearing on the charges nor is he entitled to legal representation . . . .").

I believe our court was wrong to craft a constitutional safeguard from procedural rules that were crafted by a court-appointed committee. But unless we recede from our holdings in Al-Hakim and Woods (or a majority of the Florida Supreme Court can reach a consensus on this admittedly contentious point) we are bound to follow the law that has been laid down in our district. For that reason, I must concur with the court's decision to reverse Mr. Pole's conviction.